172 So.2d 614 (1965)
Donald BASS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 4676, 4677.
District Court of Appeal of Florida. Second District.
February 24, 1965.
Rehearing Denied March 22, 1965.
*615 Sam E. Murrell & Sons, Orlando, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee; Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
DRIVER, B.J., Associate Judge.
Appellant, Donald Bass, appeals from two separate convictions and sentences for the crime of aggravated assault. Appellant was charged in two separate Informations, in one of which he was charged with having committed aggravated assault on one Mack Denson; and in the other of having committed the same offense against Ruby Dolphus. The two charges were consolidated for trial.
In both Informations, appellant was informed against jointly with John Price, Richard Price, Billy Hinton, Jane Hand and Dolly Hughes. Each of these defendants *616 was found Guilty by the jury, with the exception of Richard Price, who had a directed verdict rendered in his favor because of lack of identification. The evidence submitted to the Jury shows that the appellant and his co-defendants were all white people, and that Mack Denson and Ruby Dolphus, the victims of the assault, were colored people; that Mack Denson was the operator of a beer tavern known as the "Shanghai Juke," which catered to the colored community in and around Kissimmee, Florida; that on July 27, 1963, appellant, accompanied by his co-defendants, went to the Shanghai Juke and attempted to purchase beer from Denson, but that Denson refused to sell the beer to the defendants, contending that he was not allowed to sell to white people. The appellant and his co-defendants disputed Denson and insisted that he sell beer to them. Consequently, a verbal dispute arose inside the tavern, whereupon Denson, an elderly negro, picked up a shotgun kept on the premises. Denson and Ruby Dolphus testified that the appellant and his co-defendants then attacked Denson and a wild melee ensued, during the course of which the shotgun went off. Denson was knocked down and struck repeatedly with the shotgun. The testimony further showed that, while Denson was being assaulted, Ruby Dolphus attempted to telephone to the Sheriff's Office, but was prevented from doing to by the female defendants, Jane Hand and Dolly Hughes, along with one or more of the male defendants, who physically attacked Dolphus, tore the telephone from the wall, and struck Dolphus on the head with the telephone, as well as striking her repeatedly with their hands and feet. The fracas ended when Denson was beaten into a state of semi-consciousness and left lying on the floor; and Ruby Dolphus was left bleeding profusely from severe head wounds, for which she was hospitalized for several days.
The appellant and his co-defendants admitted going to the tavern, and testified that the altercation occurred, but contend that they were acting in self-defense, and that Denson was the aggressor. The Jury heard all the witnesses and chose to believe the testimony of Denson, Dolphus, and the other State's witnesses, rather than the appellant and his co-defendants. There is conflict in the testimony, but there is ample evidence in the record to sustain and justify the Jury's verdict. This Court, sitting as a reviewing tribunal, cannot substitute its judgment for that of the Jury as to the credibility of the witnesses and the weight of the evidence. Martin et al. v. State, 134 Fla. 174, 183 So. 634; Land v. State, Fla., 59 So.2d 370.
The appellant, in both cases, argues that the evidence was insufficient to sustain the verdict of the Jury.
For the reasons stated above, we find this contention to be without merit.
The Appellant further argues that the Information charging him with assault upon Ruby Dolphus was insufficient for the reason that, while the Information alleges that appellant and his co-defendants were armed with a "gun and a telephone," in its charging allegations it alleges that the assault was made with "fist and shoes." It may be that the Information could have been more artfully drawn. However, reading it as a whole, it cannot be said that it fails to charge the crime of aggravated assault.
In connection with this argument, appellant contends that "fist and shoes" could never constitute deadly weapons. Notwithstanding that we have found the allegation  that appellant and his co-defendants, while armed with a gun and telephone, made an assault with fist and shoes  sufficient to charge the crime of aggravated assault, appellant's contention that shoes cannot constitute a deadly weapon is worthy of comment.
There may be some merit in the argument that "fists" do not constitute a deadly *617 weapon, but the same cannot be said for the contention that shoes could not constitute a deadly weapon. Shoes come in all shapes, sizes, forms and materials  from the delicate creations of silk and leather, or satin and plastic (so dear to the hearts of the ladies), to the cleated, hobnailed, iron-toed boots and clodhoppers of the lumberjack, or the sharp-toed, leather-heeled boots of the cowboy  any one of which may be capable of inflicting grievous bodily harm or death. The records of medical science are replete with case histories of persons being seriously wounded or killed after being struck by the high heel of a woman's shoe, or having the "boot put to him" by a strong man. It is a jury question as to whether or not a shoe or boot constitutes a deadly weapon, under all the circumstances surrounding the shoe or boot, its size, weight and construction, and the manner in which it was used.
The final salvo of appellant Bass' attack on his conviction and sentence for the assault upon Ruby Dolphus is aimed at what he argues is insufficient evidence to show that he, the appellant, was acting in concert with the other defendants in the assault upon Ruby Dolphus. The State does not contend, nor does the evidence show, that the appellant Bass actually struck any blows, or by his own hand committed any assault upon Dolphus. There is, however, sufficient evidence in the record from which the Jury could find that the appellant was acting in concert with those who actually did make the assault upon Dolphus.
Where an accused is charged as a principal in the commission of an unlawful act under the theory of conspiracy or confederation to commit the unlawful act, it is not essential to show an express agreement or understanding between the parties made previous to or during the commission of the unlawful act. If an accused is present, aiding and abetting in the commission of the crime, and consciously shares in the commission of the act, he thereby becomes a principal. The community of unlawful purpose, that is, the conspiracy or confederation, need not be shown by positive evidence, and the Jury may infer from all the circumstances surrounding and accompanying the act that the common purpose to commit the crime existed. It is immaterial whether the confederation resulted from a premeditated agreement to commit the act, or whether it arose on the spur of the moment, for where two or more persons conspire and confederate to commit an unlawful act, each makes the other his agent, and each is responsible for the acts committed pursuant to the common purpose. 22 C.J.S. Criminal Law § 87, pp. 258-260.
Again, it is for the Jury to decide whether or not an unlawful act had been committed as a result of a conspiracy or confederation, or through common design. And, if there are sufficient facts in evidence to support such a finding, as there are in the instant case, the finding of the Jury will be conclusive and beyond the reach of an appellate court to disturb.
For the reasons stated the Judgment is affirmed.
Affirmed.
WHITE, Acting C.J., and ANDREWS, J., concur.