249 So.2d 452 (1971)
Marion JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 70-897.
District Court of Appeal of Florida, Fourth District.
June 18, 1971.
*453 H. Mark Purdy, of Parkhurst & LaHurd, Fort Lauderdale, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
OWEN, Judge.
At approximately 3:00 p.m. on April 11, 1970, Harold L. Morrison was lured into an alley at the rear of a bar in Fort Lauderdale where he was attacked by three or four men who savagely beat and kicked him into unconsciousness and robbed him of his watch and wallet. As a consequence of this incident appellant, Marion Johnson, and one Roy Henderson Adams were jointly informed against, tried and convicted of robbery and of aggravated assault by use of a deadly weapon, to-wit: a shoe.
The questions on this appeal involve the sufficiency of the evidence to sustain the conviction as to Marion Johnson. Upon consideration of the record, briefs and oral argument of counsel, we conclude that the justice of the cause requires that the judgment be reversed and the case remanded for a new trial on both counts.
The first point concerns the question of the sufficiency of the evidence as to identification of appellant as one of the assailants.
A female bartender testified that appellant and Adams were two of a group of six men who had been in the bar earlier drinking beer and shooting pool and who, sometime around 2:30 or 3:00 p.m. had gone out the back door of the bar into the alley; that about the same time (the exact time sequence is not clear) Morrison came in the bar and ordered a beer; that Morrison was then immediately summoned out the front door by some unidentified person; and that she did not thereafter see Morrison or the group of men although shortly afterwards she heard a commotion in the alley behind the bar, whereupon she called for the police from a nearby telephone. When the policeman arrived at the *454 scene she accompanied him to the rear of the building but there was no sign of any person.
The victim, Mr. Morrison, testified that he had gone to the bar to meet someone who was going to show him where he could buy some tools; that he had just ordered a beer when the person he was to meet summoned him outside and to the back of the building, ostensibly to complete the purchase of the tools; and that when he neared the back of the building he noticed that his friend was lying on the ground and that he himself was confronted by a large man with a tatooed heart on his chest who asked about the money for the tools. He further testified that at about the same time another man came up on his left side and a third man approached him from the right with his hand upraised in a threatening manner; that he (Morrison) was then struck, knocked to the ground and savagely kicked into unconsciousness and his wallet and watch were forceably taken from him.
As a result of the savage beating he sustained, Morrison lost the sight of one eye and was partially paralyzed so that he attended trial in a wheelchair. The court permitted the bailiff to wheel Mr. Morrison to various parts of the courtroom in order to afford him an opportunity to view all of the persons present for the purpose of making an in-court identification of any of his assailants. Mr. Morrison readily identified the co-defendant Adams as the man with the tatooed chest who had confronted Morrison near the rear of the building and had asked whether he had brought the money to buy the tools. This identification of Adams was further confirmed when Adams was required to remove his shirt and bare his chest, displaying the tatoo to the witness and jury. However, although appellant was present in the courtroom at the time, Mr. Morrison testified (after looking around the courtroom) that he simply could not identify anyone else as being among the three or four men involved in the attack upon him.
The state called two police officers to testify. The first officer stated that approximately one month after the crime occurred Mr. Morrison was shown a group of photographs from which he selected four, including one of appellant Marion Johnson. There was no objection to this testimony. However, the photographs were not placed in evidence. The second officer testified that immediately after the crime was reported he met a "second party" who stated that he knew who the culprits were, following which the informant took the officer to a bar and pointed out four people, including appellant and co-defendant Adams. A motion to strike the officer's testimony as to the identification made by the "second party" was denied.
Of the foregoing evidence, the only competent testimony touching on the identification of appellant Marion Johnson was the bartender's identification of him as being among the group of six men who had gone into the alley shortly before the crime occurred. However, at best this is only circumstantial evidence placing the appellant at the scene at or near the time the crime occurred. That circumstance would not be inconsistent with a theory that appellant actually had left the area before the crime occurred unaware of what was to transpire, or that he had remained there but had nothing whatever to do with the commission of the crime either directly or by way of aiding or encouraging it. Newton v. State, Fla.App. 1965, 178 So.2d 341; Gilday v. State, Fla.App. 1964, 168 So.2d 205. Hence, this circumstantial evidence standing alone would be insufficient to sustain a conviction. Williams v. State, Fla.App. 1968, 206 So.2d 446.
Under the facts of this case the testimony of the police officers was incompetent. The testimony of the first officer concerning the extrajudicial identification which the victim made of a photograph purporting to be that of appellant Marion *455 Johnson should not have been considered by the jury as original or substantive evidence as to the identity of the accused as a guilty party. Willis v. State, Fla. 1968, 217 So.2d 106. It could only be considered in corroboration of the testimony of the identifying witness at the trial. Here there was no identification testimony by the victim to be corroborated. He did not make an in-court identification of Johnson nor did he testify that Johnson's photograph was among those which he had selected as being of his assailants. As to the second officer's testimony relating the identification made to him by a "second party", such was clearly hearsay to prove the truth of the matter asserted, to-wit: that appellant was "one of the culprits". It was thus inadmissible and should have been stricken. Without the testimony of the police officers the remaining evidence as to identification of appellant Johnson is insufficient.
We have stated above that the second officer's testimony of the identification statement made by an unknown "second party" was clearly hearsay and thus inadmissible. Before ruling on the appellant's motion to strike such testimony, the court made inquiry as to whether the informant "pointed out the culprits" in the presence of the appellant and upon receiving an affirmative response, the court allowed the testimony to stand. Any concept that an otherwise inadmissible hearsay declaration is made admissible merely because it is stated in the presence of a party is erroneous. The fact that the party was present when the declaration was made does not create an exception to the rule against hearsay. The only significance to be attributed to the fact that a party was present at the time a statement was made by one other than the witness testifying is that under certain limited circumstances the party's failure to promptly deny such statement will give rise to the inference that the party's silence is an admission of the truth of such statement. See Gard, Florida Evidence, Rule 204, and Evidence in Florida, The Florida Bar Continuing Legal Education, 1971, §§ 5.2 and 7.5, where these principles are discussed and explained in further detail. There is no evidence in the record before us to show that the informant's accusation of appellant was made under such circumstances which (but for the criminal nature of the accusation) would normally make the same admissible as an admission by appellant because of his silence. But even the rule which makes the statement admissible as an admission by silence has doubtful application to those situations where the party is accused of crime in the presence of the police who at that time are taking the party into custody. See Jones v. State, Fla. App. 1967, 200 So.2d 574.
The second point concerns the question of the sufficiency of the evidence to establish aggravated assault as charged in the information.
The charge of aggravated assault was alleged to have occurred by use of a deadly weapon, to-wit: a shoe. A shoe can be a deadly weapon. Bass v. State, Fla.App. 1965, 172 So.2d 614. In the instant case, however, there was no evidence whatever that a shoe was involved, much less a shoe worn by appellant or anyone with whom he was acting in concert. It is true that the victim testified that after he was knocked to the ground he was kicked "like there was no tomorrow" but he did not testify that he was kicked with a shoe nor was there any testimony describing a shoe which would permit the jury to determine that it was in fact a deadly weapon. See Bass v. State, supra. A deadly weapon has been defined as any instrument which when used in the ordinary manner contemplated by its design and construction will or is likely to cause death or great bodily harm. Smith v. Nussman, Fla.App. 1963, 156 So.2d 680. The fact that an instrument actually causes great bodily injury or death does not necessarily characterize it as a deadly weapon. Smith v. Nussman, supra. It is the nature of the weapon that *456 characterizes the assault as aggravated. Goswick v. State, Fla. 1962, 143 So.2d 817. Since a shoe is not inherently a deadly weapon but may be so only when so proven, the absence of any evidence concerning the shoe alleged in the information to be a deadly weapon caused the evidence to be insufficient to sustain a conviction of aggravated assault.
The judgment of conviction and the sentence entered thereon under each count is reversed as to appellant and the case remanded for a new trial.
Reversed and remanded.
WALDEN and MAGER, JJ., concur.