James Calvin Reynolds was convicted for the first degree assault of Edward Lee Edwards, Jr. Sentence was fifteen years' imprisonment as a habitual offender.
 I
Reynolds argues that the trial judge committed error in refusing to admit the victim's hospital records reflecting the extent of his injuries and the treatment he received.
It is undisputed that Reynolds stabbed Edwards. The State's evidence presented a case of an unprovoked assault. Reynolds testified that he acted in self-defense.
At trial, Dr. Ron Johnson used hospital records to testify to the nature and extent of the victim's injuries as well as to the treatment the victim received during his seventeen-day period of hospitalization. Defense counsel also used the records in cross examining Dr. Johnson.
During cross examination of Dr. Johnson, defense counsel elicited testimony that there was no blood alcohol study done on the victim; that six days after the victim had been admitted, Dr. Johnson "felt like there was a possibility of alcohol withdrawal or delirium tremens at that point, and precautions were taken, as he was given medications that we usually give to counteract or prevent that"; and, that the victim left the hospital against Dr. Johnson's advice.
On further cross examination, the following occurred:
 "Q. — describe what the records say with regard to that hallucination?
 "MR. HOLLIS [Assistant District Attorney]: Your Honor, I'm going to object to that again. The issue in this case is was the man stabbed.
"THE COURT: I'm going to sustain on that.
 "MR. HUFFSTUTLER [Defense Counsel]: Your Honor, we would ask that these medical records be admitted into evidence then, under the subpoena and under the Alabama Rules.
 "THE COURT: I'm not going to just let them in carte blanche.
 "MR. HUFFSTUTLER: We will object because we feel like under the direct testimony and Mr. Edwards' [victim] testifying to his entire period of hospitalization and how he felt and how he hurt, I think we have the right to show that something innate and built into his system could contribute to some of that hurt, Your Honor.
"THE COURT: All right.
"MR. HUFFSTUTLER: And we object on those grounds.
 "THE COURT: All right, Very good. Your objection is noted.
 "MR. HUFFSTUTLER: And we except. And that's all I have."
No dispute has been made, and it is inconceivable that any could be, that the victim did sustain a serious physical injury as defined by Alabama Code 1975, § 13A-1-2 (9). However, on appeal, it is argued that defense counsel should have been permitted to introduce the hospital records to "minimize the extent of injuries in order to reduce the charge which he might be convicted of," to impeach the victim's credibility by showing that he was an alcoholic, and to show the victim's intoxication at the time *Page 1173 
of the stabbing. These particular objections were not raised below and, consequently, are not available on appeal, the rule being that the appellant is bound by the objection raised at trial. C. Gamble, McElroy's Alabama Evidence § 426.01 (11) (3rd ed. 1977).
"Serious physical injury" is "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Alabama Code 1975, § 13A-1-2 (9). A "physical injury" is defined as the "impairment of physical condition or substantial pain." § 13A-1-2 (8).
Since, in a prosecution for assault, the victim's preexisting physical condition may be considered on the issue of whether or not the assault "trigger[ed] a `substantial risk of death,'"Alvis v. State, 434 So.2d 859, 862 (Ala.Cr.App. 1983), it follows that a victim's preexisting physical condition may also be considered on the issue of whether the victim suffered "substantial pain," as both "substantial risk of death" and "substantial pain" are elements of the statutory definition of "serious physical injury". Furthermore, the general principle is that "a criminal defendant `takes the victim as he finds him,' see State v. Morea, 2 Ala. 275 (1841); Flanagan v. State,369 So.2d 46, 49 (Ala.Cr.App. 1979)." Alvis, 434 So.2d at 862.
Consequently, evidence of a preexisting condition as a contributing cause of the victim's pain tends to enhance, not diminish, the testimony concerning the victim's physical suffering. Therefore, in this case, the introduction of evidence that the victim suffered from symptoms of alcoholism while in the hospital would only serve to bolster the State's case that the victim suffered "substantial pain". Clearly then, the exclusion of this evidence did not injuriously affect a substantial right of the defendant and, therefore, was harmless. A.R.A.P. 45.
At trial, counsel for Reynolds argued that the medical records of the victim should have been admitted "under the subpoena and under the Alabama Rules." The statutory scheme relating to the subpoenaing and admissibility of hospital records, Alabama Code 1975, §§ 12-21-5 to -7, "merely provides a procedure by which copies of hospital records when properly certified may be introduced into evidence without the production of the original and without the custodian of these records being present to lay a predicate." Lowery v. State,55 Ala. App. 511, 514, 317 So.2d 357, 360 (1974), reversed on other grounds, 294 Ala. 347, 317 So.2d 360 (1975); Whetstone v.State, 407 So.2d 854, 861 (Ala.Cr.App. 1981).
As the trial court correctly ruled, it was not required to admit the medical records "carte blanche". Wyatt v. State,405 So.2d 154, 157 (Ala.Cr.App. 1981); Whetstone v. State, 407 So.2d at 861.
Medical records must still be relevant in order to be admissible into evidence. Lowery v. State, 55 Ala. App. at 514,317 So.2d at 360; Whetstone v. State, 407 So.2d at 861.
Therefore, notes made by a physician to the effect that the victim was a known alcoholic and may have been beaten by her husband did "not pertain to the treatment of the deceased and were inadmissible." Anderson v. State, 35 Ala. App. 111, 117-18,44 So.2d 266, 273 (1950).
Evidence of a person's habit of becoming intoxicated is not admissible to show that the person was intoxicated on a specific occasion. C. Gamble, McElroy's Alabama Evidence § 60.03 (10) (3rd ed. 1977). But, ". . . a party against whom a person has been called may ask him on cross-examination whether, at the time of the matter to which he testified on direct examination, he was drinking a great deal of the time." Id.
We note that Edwards, the victim, was asked on cross examination whether he had been drinking on the day he was assaulted. Edwards admitted that he had "had a couple *Page 1174 
of drinks." Furthermore, even assuming that the hospital records concerning the victim's preexisting condition were relevant, testimony was elicited on cross examination of the attending physician that, "there was a possibility of alcohol withdrawal or delirium tremens . . . and precautions were taken, as he [the victim] was given medications that we usually give to counteract or prevent that."
In light of the testimony that the victim suffered from alcoholism, any additional testimony or evidence concerning the physical manifestations of the victim's condition as reflected by the medical records would be cumulative and therefore the exclusion of the hospital records could have no prejudicial effect. See Peagler v. Atlantic Coast Line R.R.Co.,234 S.C. 140, 107 S.E.2d 15 (1959).
For the reasons stated above, we hold that the trial court did not err to reversal in excluding the hospital records of the victim from admission into evidence.
 II
Reynolds' two prior felony convictions were properly considered in sentencing him as a habitual offender even though they occurred before the passage of Alabama's Habitual Felony Offender Act. Lidge v. State, 419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala. 1982).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.