Roland Byron Ray III was indicted for first degree assault in violation of § 13A-6-20, Code of Alabama 1975. The jury found the appellant "guilty of first degree assault," and he was sentenced to 15 years' imprisonment and was ordered to pay $50,000 in restitution.
The facts reveal that the victim, a two and one-half year old child, suffered serious injuries as a result of battering from the appellant, her step-father. The victim arrived at the emergency room in a comatose state. Dr. Elizabeth Patrenos, a resident at Children's Hospital in Birmingham, Alabama, described the bruises on the victim's body as follows: there was a two-centimeter by two-centimeter lump over the victim's right ear that was a reddish color; there were two brownish places on her mandible; several small older brown bruises on her right shoulder and one or two bruises on her left shoulder; there were several round brown bruises going down her left rib cage and some bruises on her outer thighs; there were bright hand prints on the victim's buttocks; small bruises down her vertebra; a large bruise over her tailbone; and a rectum tear on the left hand side at the nine o'clock position. (R. 74) Under the lump on the victim's head, she had a subdural hematoma. Dr. Patrenos testified that the victim's condition was life threatening. She further testified that in her opinion the victim suffered from battered child syndrome.
Thomas Smith, the victim's natural father, testified that the victim remained in the hospital for two weeks. The victim came to live with him following her hospitalization. He stated that the victim was a normal active two-year-old prior to the incident, with no history of seizures. After the victim came out of the coma she could not sit alone and could not walk.
After leaving the hospital, the victim was taken for physical and occupational therapy. Robin Kerrick, an occupational therapist at Children's Hospital, testified that she treated the victim. Ms. Kerrick gave the victim an assessment test for a two and one-half year old, and the victim scored at a six-month level in her motor skills and a five-and-one-half month level in her mental ability. The reason the victim scored low was because of left hemiparesis (partial paralysis). The victim's skills improved with therapy. Three months after the incident she scored at a level of a 23-month-old child.
John Henderson, a friend of the appellant, testified for the state. Mr. Henderson testified that on the day after the incident he spoke with the appellant. Mr. Henderson asked the appellant what happened to the victim, and he said the appellant replied, "Man I fucked up." (R. 327) *Page 105 
The appellant testified that he did not intend to harm the victim and that he only "popped her butt" twice. The appellant claimed the victim was making a mess when he was changing her diaper so he "popped" her on the buttocks twice.
 I
The appellant first contends that the trial court erred in denying his motion for judgment of acquittal and motion for a new trial because, he says, the state failed to meet its burden of proof as to the charge of first degree assault. Specifically, the appellant contends that there was not sufficient evidence as to the elements of intent, serious physical injury, and the use of a deadly weapon or dangerous instrument.
 (a)
First, the appellant claims the state failed to prove intent. This court in Hollis v. State, 417 So.2d 617 (Ala.Cr.App. 1982), held that the criminal intent necessary for assault in the first degree may be inferred from the "circumstances of violence and brutality." In Hollis, the defendant was found guilty of first degree assault for beating his 81-year-old mother. Likewise, in this cause, the appellant's intent to harm the victim can be inferred from the injuries she suffered.
 (b)
The appellant also claims that the state failed to show the element of serious physical injury. The facts revealed that the victim arrived at the emergency room in a comatose condition. There were lumps over her right ear. As a result of the lumps on the victim's head, she suffered a "right-sided subdural hematoma secondary to closed head injury and a concussive head injury." The appellant claims that he only "spanked" the child on her buttocks, but denied causing the other injuries. The facts revealed that the victim went into a comatose state immediately following the "spanking." Dr. Rodney Snead, a physician specializing in emergency medicine, testified that the victim's condition was life threatening.
The appellant argues that the victim had suffered from seizures previously. However, there was evidence to the contrary, that the victim did not suffer from seizures until after she was beaten by the appellant. However, this court inReynolds v. State, 484 So.2d 1171 (Ala.Cr.App. 1985), stated that a victim's pre-existing physical condition could be considered on the issue whether the victim suffered substantial pain, an element of the statutory definition of "serious physical injury." Even if the child had a pre-existing condition, her life was still in danger because of the appellant's action.
 (c)
Next, the appellant claims the state failed to prove that he used a deadly weapon. However, this court in Stewart v. State,405 So.2d 402 (Ala.Cr.App. 1981), stated:
 "Certainly the use of an adult man's fists to beat a seventeen month [old] child may appropriately allow those fists to be classified as a deadly weapon or a dangerous instrument."
Stewart at 405. See also Hollis v. State, 417 So.2d 617
(Ala.Cr.App. 1982).
Similarly, in this cause the appellant's hands, which were used to beat the child can be considered a deadly weapon or dangerous instrument.
The state sufficiently proved all of the elements of first degree assault; therefore, the trial judge properly refused appellant's motions for judgment of acquittal and a new trial.
 II
Secondly, the appellant contends that the trial court committed reversible error when it permitted the introduction of photographs taken of the victim while she was hospitalized. The appellant claims that the effect of the photographs was to bias and prejudice the jury.
This court stated in Barnes v. State, 445 So.2d 995
(Ala.Cr.App. 1984), the rule about admissibility of photographs:
 "The admissibility of photographs into evidence is within the purview of the *Page 106 
trial court and will be reviewed only to determine whether there has been an abuse of discretion. Carpenter v. State, 400 So.2d 417 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981); Hurst v. State, 397 So.2d 203 (Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala. 1981). In addition, the court, in Lawrence v. State, 409 So.2d 987, 990
(Ala.Cr.App. 1982), stated: 'The evidentiary rule in this state favors the admission of photographs and affords the trial court a wide and liberal attitude in the admission of photographs illustrative of a criminal transaction.' (citations omitted). The court in Lawrence, supra, also stated that [t]he fact that a photograph has very little probative value does not prevent its admission in evidence where the photograph will tend to shed light on, strengthen or illustrate the truth of other testimony . . ." (citations omitted)
The photographs in this cause illustrate the testimony of the physicians regarding the victim's condition when she was first receiving medical attention. Where the photographs are cumulative of competent and relevant testimony, the photograph is properly admitted into evidence. Ellis v. State,570 So.2d 744 (Ala.Cr.App. 1990); Harrell v. State, 470 So.2d 1303
(Ala.Cr.App. 1984), aff'd, 470 So.2d 1309 (Ala. 1985).
Therefore, the photographs were properly admitted into evidence.
For the reasons stated above, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.