603 So.2d 570 (1992)
Jeffrey H. DIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 91-790.
District Court of Appeal of Florida, Fifth District.
July 17, 1992.
Rehearing Denied September 31, 1992.
James B. Gibson, Public Defender, and James R. Wulchak, Chief, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.

*571 ON MOTION FOR REHEARING EN BANC
W. SHARP, Judge.
We grant Dixon's motion for rehearing en banc. We withdraw the opinion issued by the three judge panel in this case and replace it with the following.
Dixon was charged by information with the attempted first degree murder of his wife. At Dixon's trial, defense counsel objected to a jury instruction on aggravated battery as a lesser included offense of attempted murder, because there was no evidence presented at trial that any weapon other than Dixon's bare hands and fists were used to accomplish the offense. Overruling this objection, the trial judge gave the instruction on aggravated battery and the jury returned a verdict on the lesser charge. He was found not guilty of attempted murder. We reverse.
The crime of aggravated battery as defined in Florida can be established by proving one of two possible scenarios:
(1)(a) A person commits aggravated battery who, in committing battery:
1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
2. Uses a deadly weapon.
§ 784.045, Fla. Stat. (1989). The state conceded at trial and on appeal that the first scenario set out in (1)(a)1. does not apply to this case. Thus, the issue here is whether bare hands and fists can be found by a jury to be "deadly weapons" pursuant to section 784.045(1)(a)2. If not, Dixon's conviction cannot be sustained and the lesser included offense instruction was reversible error.[1]
At trial, the state proved Dixon went to his estranged wife's house. He waited until they were alone, and then he told her he was going to kill her. She thought he was joking.
He went into the kitchen. When he returned he grabbed her and began choking her with his hands. He also struck her jaw and ribs several times with his fists.
As a result of being strangled, the victim passed out for about ten minutes. When she regained consciousness, Dixon was rummaging through her purse. She managed to escape to a neighbor's house after convincing Dixon to go to the kitchen to get her a glass of water.
We are reluctant to overturn Dixon's conviction for aggravated battery, since proof that he brutally attacked his wife was clear. However, it is axiomatic in our legal system that a defendant cannot be convicted of a crime unless the state proves all the necessary elements of the crime, and that crime must be properly charged.[2]
The trial court reasoned that depending on how they are used, fists and hands can be considered to be deadly weapons. If the circumstances are such that bare hands inflict deadly force, this issue is one which should be resolved by the jury. Although there is some out-of-state authority for this view,[3] we have found no Florida appellate case that so holds.
We think that view is contrary to good public policy, the law in this district, and the law in most other jurisdictions.[4] The Model Penal Code, section 210.0(4), defines "deadly weapon" as:
[a]ny firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.
Clearly something more than the use of bare hands is intended by this definition. Otherwise, the concept of what constitutes a deadly weapon could become so broad as to be meaningless and unconstitutionally *572 vague. Almost every battery would potentially be an "aggravated battery." That would do violence to our long accepted mandate to construe criminal statutes strictly. See Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984).
In Davis v. State, 565 So.2d 826 (Fla. 5th DCA 1990), we held that an indictment, which alleged the defendant kicked the victim with his foot, failed to charge him with aggravated battery because no "deadly weapon" was alleged to have been used. The court acknowledged in Davis that had the information alleged the defendant wore a heavy shoe or boot which could have inflicted deadly force, the aggravated battery charge would have passed legal muster. See Johnson v. State, 249 So.2d 452 (Fla. 4th DCA 1971); Bass v. State, 172 So.2d 614 (Fla. 2d DCA 1965).
We conclude that, in general, bare hands (like bare feet) are not deadly weapons for purposes of alleging or proving the crime of aggravated battery. The issue of whether the bare hands or feet of a person specially skilled or trained in martial arts to kill or inflict deadly force with them can be deemed "deadly weapons" is reserved for future consideration.[5] But, in this case, there was no allegation or proof Dixon had any such skills or training.
Accordingly, we reverse Dixon's conviction for aggravated battery and we direct that it be reduced to simple battery.[6] We remand to the lower court for resentencing on simple battery.
REVERSED and REMANDED.
GOSHORN, C.J., COBB, COWART, HARRIS, PETERSON, and GRIFFIN, JJ., concur.
DAUKSCH, J., dissents with opinion, in which DIAMANTIS, J., concurs.
DAUKSCH, Judge, dissenting.
I respectfully dissent for the reasons set out in the original majority opinion which was as follows:[1]
This is an appeal from a judgment and sentence, appellant having been charged with attempted murder, but found guilty by a jury of the lesser included offense of aggravated battery. Appellant argues that the trial court erred in instructing the jury on aggravated battery where there was no evidence of the use of a deadly weapon. We disagree and affirm. The question is whether an assailant's bare hands can be deadly weapons.
On September 4, 1990 appellant was charged with one count of attempted first degree murder. The information alleges that on August 18, 1990 appellant:
did unlawfully and intentionally, from a premeditated design to effect the death of JUANITA DIXON, a human being, attempt to kill the said JUANITA DIXON by hitting her or choking her, in violation of Florida Statutes 782.04(1)(a)1 and 777.04(1);
Juanita Dixon testified at trial that she had separated from appellant, her husband of twenty-two years, for a few years before May 1990, when she lived with him for a few days. Mrs. Dixon testified that something unusual happened on the afternoon of August 18, 1990:
It was about 4:30 in the afternoon. [Appellant] came up in my daughter's car and came in the house and, you know, we sat down and started talking.
Shortly after we  Well, we just talked a little while. Then I said, "Are you going to stay now or are you going to leave with my daughter?" He said, "I'll stay." I said, "No don't you stay, just leave with her."
So, we, you know, argued back and forth whether he was going to stay or whether he was going to leave. So I *573 said, "Well, the heck with it," you know. "Just stay because I don't feel like arguing." So my daughter just, you know, she waited to see whether he was going to stay or leave ...
So she got in her car and she left, and by the time she left, he said, "I was just waiting until she leave, I'm going to kill you,"
Mrs. Dixon indicated that this had not been a violent argument and she thought appellant, when he said this, "was jiving" because, at the point when appellant said this, they were sitting in the living room looking at television. Mrs. Dixon testified that appellant walked in the kitchen while she was still in the living room watching television, "and when he came out of the kitchen, that's when he grabbed me. Then I said `Oh my gosh he is for real.'" She indicated appellant "had his hands and things around my neck choking me." She testified appellant hit her several times in her jaw and that she "had some bruises and things around my neck and my ribs." She testified appellant hit her with a closed hand and did not really say anything while he was hitting her. She testified appellant "grabbed me around my neck, and he was ... choking me." Mrs. Dixon indicated that as a result of appellant's choking her she passed out "for about ten minutes." She indicated that when she came to appellant "was in my purse." When she regained consciousness, Mrs. Dixon ran over to the neighbor's home, the Kruegers, to seek help. She testified Mr. Krueger called 911 and she spoke to the woman at 911.
Mrs. Dixon testified that after this an ambulance came and picked her up taking her to Leesburg Regional Medical Center. After her trip to the hospital that night she had to make three further trips to the hospital for x-rays the following Monday, Wednesday and Friday. She testified she "had bruises all around my neck and my jaw." Mrs. Dixon testified that appellant stated he was going to kill her "maybe no more than two" times.
Discussing jury instructions, the prosecutor later stated:
My understanding of the definition of the case law is that there has to be something like a broken bone, something that's life threatening to meet that definition and in this case I don't think that we have that. What I think we may have is use of a deadly weapon so I've included that.
Defense counsel objected that there had been no evidence of a weapon. The trial court later noted that the instructions state that a weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm. Defense counsel objected to any mention of deadly weapons, but the trial court stated he was going to leave in the instruction.
In his summation, defense counsel argued:
We don't have a deadly weapon anywhere in this courtroom, except I think the state might say that Mr. Dixon's hands should be considered a deadly weapon. I submit to you that that's just a little bit too far out of the realm of common sense in this particular instance. There was no proof of repeated blows, if there had been, there would have been a lot more damage. We would have seen photographs of a swollen, bloody face, of a bloody nose, of a broken nose, of a broken jaw. We didn't have that. We don't have that here.
There is no Aggravated Battery. There is no deadly weapon. Not even Mr. Dixon's hands could be considered a deadly weapon in this case.
Aggravated Assault again a requirement of that is that the assault was made with a deadly weapon. Again we don't have the deadly weapon, not even if you stretch it to say that somebody's hands are a deadly weapon if they used them as such. There is no evidence that they were used as such in this particular case.
Appellant argues the jury's verdict for aggravated battery must be reversed since the state failed to prove a deadly *574 weapon was used. Section 784.045, Florida Statutes (1989) defines aggravated battery as follows:
(1)(a) A person commits aggravated battery who, in committing battery:
1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
2. Uses a deadly weapon.
Appellant notes the state conceded below that the case did not involve "great bodily harm, permanent disability, or permanent disfigurement" but instead argued the use of a deadly weapon was involved.
In Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984), this court stated that the term "a deadly weapon," as a part of a criminal statute, must be strictly construed, and held that "whether or not an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape and material and the manner in which it was used or was capable of being used." See also State v. Jeffers, 490 So.2d 968, 969 (Fla. 5th DCA 1986).
Appellant argues that the evidence does not support the contention that the use of his hands in committing a battery constituted use of a deadly weapon. He notes that in Davis v. State, 565 So.2d 826 (Fla. 5th DCA 1990), this court held that the defendant's kicking his victim with his foot did not constitute use of a "deadly weapon," precluding enhancement of a battery from simple to aggravated. The pertinent facts in Davis are:
The indictment charged Davis with battery with a deadly weapon, "To-wit: The foot of Harry Davis, without intent to kill." Proof at trial related solely to how Davis viciously kicked the victim with his foot in the face and torso while the victim was helpless, on the ground, feeling around for his broken glasses. The only testimony suggesting Davis was wearing heavy shoes when kicking the victim was the treating physician's testimony that the victim's skull fractures near his eye could not have been caused by a blow from Davis' fist without breaking bones in Davis's hand, which did not occur.

Davis, 565 So.2d at 826. This court stated that the issue in Davis was whether or not kicking with a foot can constitute use of a deadly weapon, agreeing with prior Florida case law that a shoe or boot worn on a foot which delivers a blow to a victim may be found, depending on the evidence in the case, to be use of a deadly weapon. Johnson v. State, 249 So.2d 452 (Fla. 4th DCA 1971); Bass v. State, 172 So.2d 614 (Fla. 2d DCA 1965). This court noted "the indictment only alleged use of a foot, and there is no testimony about shoes or boots on Davis' foot when the victim was kicked" and concluded "[t]he failure to charge and prove the deadly weapon element of aggravated battery in this case is fatal." 565 So.2d at 827.
Appellant argues that in ruling as it did, this court in Davis appears to be ruling that a mere body part does not as a matter of law constitute a deadly weapon without the use of some additional instrument and further asserts there is no Florida case in which a defendant was successfully prosecuted for aggravated battery based on the use of a bodily appendage as a deadly weapon. He argues Davis suggests that there can be no such case.
Appellant brings to the attention of this court Konrad v. State, 763 P.2d 1369 (Alaska App. 1988), where the Court of Appeals of Alaska held that a defendant did not use his bare hands "as dangerous instruments" and did not commit third-degree assault under Alaska law when he struck his wife. The court summarized previous Alaskan case law and concluded
before a hand may be deemed a "dangerous instrument," the state must present particularized evidence from which reasonable jurors could conclude beyond a reasonable doubt that the manner in which the hand was used in the case at issue posed an actual and substantial risk of causing death or serious physical injury, rather than a *575 risk that was merely hypothetical or abstract.
763 P.2d at 1374. Applying the test to the Konrad case, the court noted that apart from Mrs. Konrad's testimony that her husband's hand was in a fist when he struck her, there was nothing in the record to establish that the manner in which he used his hands was inordinately violent or particularly calculated to inflict serious physical injury. "No evidence was offered to suggest that [the husband] had ever received martial arts training or that he was otherwise skilled in using his hands to inflict physical injury." 763 P.2d at 1375.
However, the state notes there is considerable out-of-state authority holding that, depending on the manner in which an individual uses his hands, hands can be considered deadly weapons. In Ray v. State, 580 So.2d 103 (Ala.App. 1991), the court held that the defendant's hands, which were used to beat a 2 1/2 year old child, could be considered "a deadly weapon or dangerous instrument." 580 So.2d at 105. In Johnson v. State, 815 S.W.2d 707 (Tex. App. 1991) the Court of Criminal Appeals of Texas held that an indictment charging a defendant with causing the death of his wife by striking her with his feet and hands was sufficient to satisfy the notice requirement for seeking a deadly weapon finding. In Morales v. State, 792 S.W.2d 789 (Tex. App. 1990), the court held that a hand was not a deadly weapon per se, but could become a deadly weapon in the manner of its use. In Cooper v. State, 773 S.W.2d 749, 750 (Tex. App. 1989), the court similarly stated "[a] fist or hand is not a deadly weapon per se, but it can become a deadly weapon in the manner used depending upon the evidence shown ... Therefore, the hands could become a deadly weapon if in the manner of use, the hands are capable of causing death or serious bodily injury."
We find that the circumstances surrounding the actual use of the hands must be taken into consideration on a case-by-case basis, and that where there are facts sufficient upon which a jury could reasonably find an object, such as a person's hand, to be a deadly weapon based upon the manner in which it was used, the jury should be so instructed. The fact that the object, such as a hand, is not a conventional deadly weapon, such as a firearm, does not mean that the object was used in a manner that could not be considered deadly: here appellant grabbed the victim by the neck and began to strangle her. Where an individual uses his hands to strangle a person, the use of his hands in such a manner turns his hands into a deadly weapon: while death by strangulation is not instantaneous, there can be little doubt death is the result for which the perpetrator is striving. "[I]t is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear ..." Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986). The decision whether appellant's hands were in fact a deadly weapon was a decision properly left to the jury.
Appellant argues that if the term "deadly weapon" were allowed to include appellant's use of his hands in this case, any battery may be committed while using a deadly weapon, and could be enhanced merely by charging this aggravating factor. We reject this argument since there is plainly a difference between the punches given in Konrad or the kicks given in Davis, and the use of appellant's hands here to attempt to strangle his wife. It seems difficult to argue that under these facts, the human hand is not an instrument which, in the manner in which it was used, could have caused death or serious bodily injury where, here, appellant clearly could have strangled Mrs. Dixon to death.
Affirmed.
The majority opinion en banc convinces me even more that bare hands can be used as a deadly weapon and thus, dependent upon the use, be classified as a deadly weapon. I quote from that opinion what so convinces me: "The issue of whether the bare hands or feet of a person specially *576 skilled or trained in martial arts to kill or inflict deadly force with them can be deemed `deadly weapons' is reserved for future consideration. But, in this case, there was no allegation or proof Dixon had any such skills or training."
Of course, when an appellate opinion says it does not decide an unraised but related issue it is usually inviting and implying. I, too, am prepared to say that the statute which proscribes use of a deadly weapon can be violated by a karate chop to the throat, a kick to the heart, the heel of the hand upward to the nose, the fist to the spine, and so forth. The skilled or imaginative reader can add to the list.
If one uses his hands as a deadly weapon he has violated the statute; it depends upon how his hands are used.
DIAMANTIS, J., concurs.
NOTES
[1] Ray v. State, 403 So.2d 956, 961 (Fla. 1981).
[2] Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (due process requires state to prove, beyond reasonable doubt, every element of the offense charged).
[3] See Ray v. State, 580 So.2d 103 (Ala.App. 1991); Johnson v. State, 815 S.W.2d 707 (Tx.App. 1991); Morales v. State, 792 S.W.2d 789 (Tex. App. 1990); Cooper v. State, 773 S.W.2d 749 (Tex. App. 1989).
[4] "Parts of the Human Body as Dangerous Weapons," 8 A.L.R.4th 1268, 1269.
[5] See Ransom v. State, 460 P.2d 170, 171-172 (Alaska 1969).
[6] § 784.03, Fla. Stat. (1989).
[1] Because the en banc opinion purports to "withdraw" the original opinion I suspect some publishers may not publish it so it is reiterated here.