ALTENBERND, Judge.
Charles Raymond Lee appeals his judgments and sentences for trespass and aggravated battery. We affirm, but write to discuss the probable insufficiency of the evidence presented by the State concerning his use of a deadly weapon.
In July 2009, Mr. Lee entered the home of Mr. McNeil and physically attacked him. A woman at this home witnessed the attack. She testified that Mr. Lee hit Mr. McNeil with his fists and kicked him with his feet. The motive for this attack is unclear, but Mr. McNeil was apparently attempting to assist the woman in collecting a debt that Mr. Lee owed either the woman or another member of her family.
Mr. Lee testified, claiming that he went to the home to give the woman some of the money that he owed. He claimed that Mr. McNeil started the fight, that he hit Mr. McNeil in the head several times with his fists, but that he did not kick Mr. McNeil.
Mr. McNeil testified that he had a preexisting back injury. He claimed that Mr. Lee knocked him to the ground and then kicked him both in his back and on his head. As a result of this attack, he was hospitalized for several days. Mr. McNeil claimed that he suffered a badly swollen jaw, some fractures to his face, and lacerations on his head that required stitches. There is no evidence that his back injury was aggravated by this event. Although the State introduced photographs of the injuries, it presented no medical testimony.
The witnesses claimed that Mr. Lee was wearing “tennis shoes” when he kicked Mr. McNeil. Our record has no photographs of the shoes, and the jury apparently knew nothing more about the shoes than Mr. McNeil’s claim that the shoes were “big.”
The State’s amended information charged Mr. Lee with burglary of a dwelling and aggravated battery. The information charged that the battery was aggravated both because the battery caused great bodily harm, permanent disability, or permanent disfigurement and because Mr. Lee used a deadly weapon, which the information described as “shoes or boots.” See § 784.045, Fla. Stat. (2009). At the end of the State’s case, Mr. Lee moved for a judgment of acquittal, specifically arguing that the State had not proven that the big tennis shoes were deadly weapons. The trial court denied the motion and instructed the jury on both theories of aggravated battery.
The verdict form did not separate the two theories of aggravated battery. Without objection, the jury was asked to determine only whether Mr. Lee was “guilty of aggravated battery, as charged.” The jury returned a verdict, finding Mr. Lee guilty of the lesser offense of trespass on *1185 the charge of burglary but guilty as charged on the count of aggravated battery.
On appeal, Mr. Lee’s attorney initially filed an Anders[1] brief. This court concluded that the evidence as to a battery resulting in great bodily harm was sufficient to present a jury issue without regard to whether the injuries were caused by Mr. Lee’s fists or by his feet. We were troubled, however, by the limited evidence presented to support a claim that Mr. Lee’s tennis shoes constituted deadly weapons. We were uncertain whether an error in connection with the shoes could result in harmful, reversible error in this case. Accordingly, we ordered supplemental briefing. Regional conflict counsel appeared on behalf of Mr. Lee and submitted supplemental briefing.
At the outset of our analysis, we observe that the legal reasoning involved in deciding whether a shoe is a “deadly weapon” is somewhat unusual. It is unusual due to a combination of two factors. First, a shoe is not inherently a deadly weapon; its use determines whether it falls within this category. The standard jury instructions explain that a weapon is a “deadly weapon” if it is “used or threatened to be used in a way likely to produce death or great bodily harm.” Fla. Std. Jury Instr. (Crim.) 8.2, 8.4. Second, the case law generally recognizes that a person’s hands and feet, at least in the absence of special training, are not deadly weapons. See Davis v. State, 565 So.2d 826 (Fla. 5th DCA 1990) (evidence that a defendant used a hand or foot in a battery does not establish aggravated battery); Dixon v. State, 603 So.2d 570 (Fla. 5th DCA 1992) (en banc) (generally bare hands are not deadly weapons).
When a person uses a firearm or a large hunting knife in the course of intentionally touching or striking another against his will, the person can be charged and convicted of aggravated battery even though the attack does not result in great bodily harm. Fla. Std. Jury Instr. (Crim.) 8.4. In such a case, the deadliness of the weapon is readily apparent, and a jury can easily determine that practically any ordinary use of the firearm or large knife is “likely to produce death or great bodily harm.” When a person uses a less common weapon, such as a butter knife or a kitchen tool, the question of deadliness undoubtedly becomes more difficult for the jury, but it is still relatively easy to determine from the object itself whether the use of the object was likely to result in a great bodily harm.
Given that a barefoot kicker generally can be charged only with simple battery unless the battery actually results in great bodily harm, the question arises as to what the state must prove to establish that a specific foot was transformed into a deadly weapon by the addition of a shoe. If the evidence actually establishes that the use of a shoe resulted in great bodily harm, then it would seem obvious that the State has proven that the use of the shoe was the use of a deadly weapon. But in that circumstance, it is unnecessary to determine that the shoe was a deadly weapon given that the attack resulted in great bodily harm.
Undoubtedly, the most colorful discussion of this legal issue is that of Judge B.J. Driver when serving as an associate judge on this court:
There may be some merit in the argument that ‘fists’ do not constitute a deadly weapon, but the same cannot be said for the contention that shoes could not constitute a deadly weapon. Shoes *1186 come in all shapes, sizes, forms and materials — from the delicate creations of silk and leather, or satin and plastic (so dear to the hearts of the ladies), to the cleated, hobnailed, iron-toed boots and clodhoppers of the lumberjack, or the sharp-toed, leather-heeled boots of the cowboy — any one of which may be capable of inflicting grievous bodily harm or death. The records of medical science are replete with case histories of persons being seriously wounded or killed after being struck by the high heel of a woman’s shoe, or having the ‘boot put to him’ by a strong man. It is a jury question as to whether or not a shoe or boot constitutes a deadly weapon, under all the circumstances surrounding the shoe or boot, its size, weight and construction, and the manner in which it was used.
Bass v. State, 172 So.2d 614, 617 (Fla. 2d DCA 1965).
We do not read this explanation to mean that mere evidence that a defendant had a shoe on his or her foot is always sufficient to present a case for the jury. We are inclined to believe that evidence, for example, that merely established that a defendant was wearing lightweight, rubber flip-flops or ballet slippers would not be sufficient to establish that she was using a deadly weapon. Since Judge Driver’s opinion in 1965, the generic “tennis shoe” has evolved into a wide array of shoes, some far more or less likely to transform a simple human foot into a deadly weapon.
Judge Driver was envisioning a jury question when the State provided evidence of “all the circumstances,” including the size, weight, construction, and manner it was used. There is no evidence in this case concerning the weight or construction of the shoe. The jury knew nothing of its size except that it was “big.” The shoe was not introduced into evidence, and the jury had no photograph of the shoe.
There is no medical evidence in this case to establish that the injuries to Mr. McNeil’s face were caused by a foot and not by a bare fist. There is no evidence that the injuries, if caused by a foot, were greater because Mr. Lee was wearing a tennis shoe.[2] Without speculating, we are hard pressed to determine how a jury would decide beyond a reasonable doubt that a shoe was “used or threatened to be used in a way likely to produce death or great bodily harm” in a ease with such limited evidence.
Given the manner in which this case was submitted to the jury with a general verdict, even if we determined that the evidence of a big tennis shoe was insufficient to prove the use of a deadly weapon, we conclude that the jury’s verdict would still support the judgment on appeal. See Mungin v. State, 689 So.2d 1026, 1030 (Fla.1995) (“reversal is not warranted where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient”). Thus, despite our misgivings about the evidence of a deadly weapon in this case, we affirm the judgments and resulting sentences.
Affirmed.
VILLANTI and MORRIS, JJ., Concur.

. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. We do not mean to suggest that the State would always need to prove that the use of a shoe actually caused greater damage than if the person used only a bare foot. The jury question is whether the shoe was used in a way "likely” to produce great bodily harm. Evidence that the shoe actually caused or could have caused injury greater than that typically caused by a bare foot would simply seem to be very probative as to this issue.