703 So.2d 871 (1996)
Ex parte Donald Lee COBB.
(Re Donald Lee Cobb
v.
State).
1941500.
Supreme Court of Alabama.
August 2, 1996.
Order Overruling Rehearing October 25, 1996.
*873 Brian Dowling, Dothan, for petitioner.
Jeff Sessions and Bill Pryor, attys. gen., and J. Thomas Leverette, asst. atty. gen., for respondent.
ALMON, Justice.
This Court issued the writ of certiorari to determine whether a person's fists can be "deadly weapons" or "dangerous instruments" under the definitions of these terms in § 13A-1-2(11) and (12), Ala.Code 1975. Donald Lee Cobb was convicted of assault with a dangerous instrument for hitting an adult female in the face with his fists. The Court of Criminal Appeals affirmed Cobb's conviction, by an unpublished memorandum. Cobb v. State, 678 So.2d 801 (Ala.Crim.App. 1995) (table).
Cobb was charged by separate indictments with assault in the first degree on Wanda Fassett and second-degree assault on her husband, David Fassett, based on Cobb's actions in a fight that occurred outside a Dothan nightclub. The indictments charged Cobb with using a deadly weapon or dangerous instrument, specifically his fists, to inflict injuries upon the victims. The circuit court instructed the jury to decide whether, under the circumstances, Cobb's fists were "highly capable of causing death or serious physical injury," and it instructed the jury that if they were, then they were dangerous instruments. The jury found Cobb guilty of assault in the first degree on Wanda Fassett and assault in the third degree on her husband. Cobb was sentenced to five years' imprisonment and was fined $250 on the first-degree conviction and was sentenced to one year and fined $250 on the third-degree conviction. Under the court's instructions, the jury could have returned these verdicts only by finding that Cobb's fists constituted dangerous instruments in regard to the assault on Wanda Fassett but not in regard to the assault on David Fassett.[1] Therefore, the issue presented in the petition pertains only to Cobb's conviction for assault with a dangerous instrument on Wanda Fassett. Cobb's attack on his conviction for third degree assault on David Fassett presents no merit, so the judgment of the Court of Criminal Appeals is affirmed insofar as it affirmed that conviction.
Under the Alabama Criminal Code, the use of a deadly weapon or a dangerous instrument elevates a simple assault, assault in the third degree, § 13A-6-22(a)(1), which is a misdemeanor, to an assault in the second degree, a class C felony, § 13A-6-21(a)(2). Also, the infliction of "serious physical injury" without the use of a deadly weapon or dangerous instrument is assault in the second degree, § 13A-6-21(a)(1), but the use of a deadly weapon or a dangerous instrument elevates the offense to assault in the first degree, a class B felony. A person commits an assault in the first degree when, "[w]ith the intent to cause serious physical injury to *874 another person, he causes serious physical injury to any person by means of a deadly weapon or dangerous instrument," § 13A-6-20(a)(1); Cobb was convicted under this provision.
In 1977 the legislature adopted the Alabama Criminal Code, which became effective in 1980. Ala.Code 1975, § 13A-1-1 et seq. For the first time, the legislature defined "deadly weapon" and "dangerous instrument." Section 13A-1-2(11) defines a "deadly weapon" as:
"A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles."
Section 13A-1-2(12) defines a "dangerous instrument" as:
"Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury, and such term includes a `vehicle,' as that term is defined in subdivision (13) of this section."
This Court has never addressed the question whether a person's fist or hand fits the statutory definition of a deadly weapon or a dangerous instrument.[2] However, shortly after the adoption of the Criminal Code, the Court of Criminal Appeals held that, depending on the manner and circumstances of their use, a person's fists could be considered "deadly weapons" or "dangerous instruments" under the statutory definitions. Stewart v. State, 405 So.2d 402 (Ala.Crim. App.1981).
In Stewart v. State the court held that "the use of an adult man's fist to beat a [17-month-old] child allows those fists to be classified as a deadly weapon or a dangerous instrument." Stewart, 405 So.2d at 405. In reaching this conclusion, the court stated:
"Long before the adoption of the new criminal code on January 1, 1980, Alabama subscribed to the view that it was the use of the weapon or instrument, and not solely its nature, that determined whether or not it was esteemed deadly. Helton v. State, 372 So.2d 390 (Ala.Crim.App.1979), and cases cited therein. This emphasis on `use' under the circumstances [has] been codified in Section 13A-1-2(12). Moreover, there is no limitation expressed in § 13A-1-2(11) which would prevent human fists from being considered a `deadly weapon' under appropriate circumstances."
Id. (Emphasis omitted.)
The Stewart court based its holding on a misplaced analogy to the reasoning in Helton v. State, 372 So.2d 390 (Ala.Crim.App.1979), which was decided before the Code definition of "deadly weapon" or "dangerous instrument" became effective. In Helton the defendant was convicted of assault with intent to murder for repeatedly kicking the victim in the face with his boot-clad foot. Helton, 372 So.2d at 391. The central issue in Helton was whether the blows inflicted by Helton were sufficient to support an inference of malice, which was necessary for a conviction of assault with intent to murder. Thus, the court had to determine whether kicking the victim in the face with a boot constituted the use of a deadly weapon, or, in the alternative, exhibited such violence and brutality that an intent to murder could be inferred. Id., 372 So.2d at 393.
The Helton court relied on the theory that it is the use of the weapon and not solely its nature that determines if it is likely to cause death or injury. Id. To illustrate that fact, Judge Bowen, writing for the court, cited several cases in which an object that would not normally be considered a deadly weapon or dangerous instrument  for example, an *875 automobile crank, a large stone, a bottle, an aluminum chair, or a file  was used to inflict injury on another person. After citing those cases, the court concluded: "[T]hus we cannot state, as a matter of law, that kicking with a shoe-clad foot may not constitute assault with a deadly weapon." Id. (emphasis added).
In Helton, the court was focusing on the fact that the defendant kicked the defendant with his boot, and the boot, not the foot, was held to be a deadly weapon. This point is made clearer by the fact that the circuit court instructed the jurors that if they found that a boot or shoe was used in such a manner that it became a deadly weapon then they could infer an intent to take life. Id., 372 So.2d at 394-95 n. 1. The court did quote an A.L.R. annotation as stating that while feet or shoes are not deadly weapons per se, the manner of their use in particular situations may make them deadly weapons. A reading of the entire case, however, clearly shows that the holding was based on the fact that the defendant used his boots to inflict the injury.
Therefore, it was not entirely correct for the court in Stewart to write the following:
"In Helton, supra, this court held that: `while feet or shoes are not deadly weapons per se, the manner of their use in particular situations may make them deadly weapons.' By analogy, we think the same principles apply here to appellant's fists."
Stewart, 405 So.2d at 405 (citation omitted). The same principles could not apply to Stewart's fist, because Helton relied upon the fact that the defendant wore a pair of boots  objects that would not normally be considered deadly weapons, but, when used to kick someone in the face, may become deadly weapons or dangerous instruments.[3]
Aside from the fact that we find the Stewart court's reliance on Helton misplaced, we also hold that the Stewart court erred in concluding that fists may be included in the definitions found in §§ 13A-1-2(11) and (12) of the Criminal Code. In regard to § 13A-1-2(11), the Stewart court stated that "there is no limitation expressed in § 13A-1-2(11) which would prevent human fists from being considered a `deadly weapon' under appropriate circumstances." Stewart, 405 So.2d at 405. We conclude that under a reasonable reading of the statutory definitions, fists cannot be considered "deadly weapons" or "dangerous instruments."
It is well settled that "[w]ords used in [a] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." Tuscaloosa County Commission v. Deputy Sheriffs' Association of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991). Furthermore, if the language is clear and unambiguous, then there is no room for judicial construction. Giving the words found in the definition of "deadly weapon" in § 13A-1-2(11) their "natural, plain, ordinary, and commonly understood meaning," we think it clear that the legislature intended to include only inanimate objects, i.e., "anything manifestly designed, made or adapted for the [purpose] of inflicting death or serious physical injury." No language in § 13A-1-2(11) could be reasonably interpreted to indicate that this definition was intended to apply to a bare human fist.
However, even to the extent that it could be argued that the definition of "deadly weapon" is ambiguous, the ejusdem generis principle of statutory construction is applicable to determine the intent of the legislature. Under that principle, where general words follow specific words in a statute, the general words are construed to embrace only objects similar to those objects enumerated by the specific words. This rule is equally applicable when specific words follow general words, as in § 13A-1-2(11). 2A Singer, Statutes and Statutory Construction, § 47.17 (5th ed.1992).
The definition states that a deadly weapon is a "firearm or anything manifestly designed, *876 made or adapted for the purposes of inflicting death or serious physical injury." It then lists 12 specific objects that are "designed as weapons and are easily and readily susceptible of producing death or serious injury." Commentary, Ala.Code 1975, § 13A-1-2(11). Included in that list are various types of firearms, knives, and objects designed to deliver blunt force trauma. Applying the rule of ejusdem generis to § 13A-1-2(11), we conclude that the legislature intended to include as deadly weapons only things that are similar to the listed weapons. Only objects that are "designed, made or adapted for the purposes of inflicting death or serious physical injury" fit the definition of "deadly weapon." It is clear that a human fist does not fall into this class.
In regard to dangerous instruments and § 13A-1-2(12), the Stewart court correctly stated that the "emphasis on `use' under the circumstances" was codified in the definition of "dangerous instrument," 405 So.2d at 405. However, it is not clear from the language of the statute that the legislature intended to include fists in the definition of "dangerous instrument." The Code defines a "dangerous instrument" as:
"Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury, and such term includes a `vehicle,' as that term is defined in subdivision (13) of this section."
§ 13A-1-2(12) (emphasis added).
In common language, a fist is not described as, nor is it considered to be, an "article" or a "substance"; therefore, it is clear that these words were not intended to include fists. However, whether a fist could be considered as an "instrument" is less clear. In one sense the term "instrument" describes a means by which something is achieved, while in another sense it refers to a utensil or a device; therefore, an ambiguity exists in the meaning of "instrument." When a statute contains an ambiguous term or phrase, a court strives to determine the intent of the legislature and to give effect to that intent.
When the legislative intent behind a statute is not clear, the meaning of doubtful words may be determined by reference to their relationship with other associated words. Therefore, when two or more words are grouped together, and those words ordinarily have a similar meaning, but are not equally comprehensive, an ambiguous word may be defined by the accompanying words. Ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense. 2A Singer, Statutes and Statutory Construction, § 47.16 (5th ed.1992). This maxim of statutory construction, noscitur a sociis, has been embraced by this Court as an aid in construing ambiguous statutory language. Winner v. Marion County Commission, 415 So.2d 1061 (Ala. 1982).
"Article" and "substance" are used in § 13A-1-2(12) to denote physical, inanimate objects or items. We conclude that by associating the word "instrument" with these two words the legislature intended for it to refer to utensils or implements, not parts of the human body.
The Supreme Court of Kentucky reached the same result in a case presenting the very issue we are considering here. In Roney v. Commonwealth, 695 S.W.2d 863 (Ky.1985), the court had to determine if the general assembly intended to include fists in its statutory definition of "dangerous instrument." Roney, 695 S.W.2d at 864. Kentucky's statutory definition was identical to the definition in our Code. The court concluded that the general assembly did not intend for body parts to be considered as dangerous instruments. The court stated:
"The fact that the statute contains three words, `instrument, article or substance' all of which are commonly used to refer to something other than a part of the human body, may be said to indicate that each of the three words was used to refer to a specific object other than a part of the human body."
Roney, 695 S.W.2d at 864.
The commentary to § 13A-1-2 states that most of the definitions found in *877 this section were adopted from the statutes of Michigan, New York, and Texas and the proposed New Federal Criminal Code. Commentary, Ala.Code 1975, § 13A-1-2. It appears that our definition of "dangerous instrument" was adopted from the New York statute. The New York Penal Law defines "dangerous instrument" as:
"Any instrument, article or substance, including a `vehicle' as that term is defined in this section, which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."
N.Y. Penal Law § 10.00(13). The courts of New York have held that parts of the human body cannot be dangerous instruments unless they are at least covered with apparel or objects that aggravate their use. People v. Johnson, 122 A.D.2d 341, 504 N.Y.S.2d 311 (1986). In Johnson, the defendant was convicted of assault in the second degree for using his bare hands to fracture the ribs of a nine-month-old infant. Johnson, 122 A.D.2d at 341-42, 504 N.Y.S.2d at 312. The Appellate Division reversed the conviction because it was "uncontested that [the] defendant used only his hands to inflict the injury." Id., 122 A.D.2d at 343, 504 N.Y.S.2d at 313-14. See also, People v. Davis, 96 A.D.2d 680, 466 N.Y.S.2d 540 (1983), and People v. Peet, 101 A.D.2d 656, 475 N.Y.S.2d 898 (1984), aff'd, 64 N.Y.2d 914, 488 N.Y.S.2d 379, 477 N.E.2d 620 (1985). While the interpretations of the New York appellate courts are not binding on this Court, they are persuasive authority, because of the fact that our legislature adopted our definition from the New York Penal Law.
In Brock v. State, 555 So.2d 285, 287 (Ala. Crim.App.1989), the Court of Criminal Appeals quoted an annotation as stating that the view that fists can be considered deadly weapons or dangerous instruments is a minority view. Annot., Parts of the Human Body as Dangerous Weapons, 8 A.L.R.4th 1268 (1981). Our research indicates that the better-reasoned cases do not allow body parts, without more, to be considered deadly weapons or dangerous instruments.
Further evidence that the legislature did not intend for fists to be considered deadly weapons or dangerous instruments is the fact that a person can be convicted for seconddegree assault for intentionally inflicting serious physical injury on another person. Ala. Code 1975, § 13A-6-21(a)(1). This section does not mention the use of a deadly weapon or dangerous instrument; instead, it simply requires "serious physical injury." However, § 13A-6-20(a)(1) provides that a person who causes serious physical injury to any person by means of a deadly weapon or dangerous instrument commits assault in the first degree. If the legislature intended fists to be considered as deadly weapons or dangerous instruments, then there would be no objective basis for distinguishing a first-degree assault under § 13A-6-20(a)(1) from a second-degree assault under § 13A-6-21(a)(1). If fists may be dangerous instruments, there is no basis for determining whether an offense constitutes a first- or second-degree assault. If the elevation in seriousness is made to depend upon the use of an implement apart from the assailant's own body, then there is a rational basis for this elevation and fair notice to an assailant that the use of a weapon or injurious implement will increase the seriousness of his crime.
"In enacting a criminal statute, there is an obligation on the State to so frame it that those who are to administer it and those to whom it is to be administered may know what standard of conduct is intended to be required and legislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law's enforcement."
Kahalley v. State, 254 Ala. 482, 483, 48 So.2d 794, 795 (1950). See also Esco v. State, 278 Ala. 641, 179 So.2d 766 (1965); State v. Gooden, 570 So.2d 865 (Ala.Crim.App.1990).
We hold that the use of fists or other body parts cannot constitute the use of a "deadly weapon" or "dangerous instrument" as those terms are defined in § 13A-1-2(11) and § 13A-1-2(12).
*878 To the extent that Stewart v. State, 405 So.2d 402 (Ala.Crim.App.1981), held that hands or fists may be deadly weapons or dangerous instruments, that case is overruled, and all cases following that holding are, to that extent, likewise overruled.
For the foregoing reasons, the judgment of the Court of Criminal Appeals, insofar as it affirmed Donald Lee Cobb's conviction for assault in the first degree on Wanda Fassett, is reversed. The judgment is affirmed insofar as it affirmed Cobb's conviction for assault in the third degree on David Fassett.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, and COOK, JJ., concur.
KENNEDY, J., concurs in the result.
HOUSTON and BUTTS, JJ., concur in part and dissent in part.
KENNEDY, Justice (concurring in the result).
I concur in the result of the majority opinion that under the specific facts of this case, the defendant's fists could not be considered a deadly weapon or dangerous instrument under § 13A-6-20(a)(1), Ala.Code 1975. However, under certain situations, the use of fists could be a deadly weapon or dangerous instrument.
BUTTS, Justice (concurring in part and dissenting in part).
I think the Court of Criminal Appeals properly affirmed both convictions. I would affirm as to both. I accept the rationale of Stewart v. State, 405 So.2d 402 (Ala.Crim. App.1981).
HOUSTON, J., concurs.

On Application for Rehearing
ALMON, Justice.
In accordance with Ex parte Edwards, 452 So.2d 508 (Ala.1984) and cases following Edwards, e.g., Ex parte Roberts, 662 So.2d 229 (Ala.1995) the Court of Criminal Appeals is instructed to remand for the circuit court to enter a judgment of conviction of second degree assault for the assault on Wanda Fassett and to sentence Cobb for that conviction. The only difference between § 13A-6-20(a)(1), the offense of assault in the first degree, for which Cobb was convicted, and § 13A-6-21(a)(1), assault in the second degree by reason of infliction of serious physical injury, is the requirement in § 13A-6-20(a)(1) that a defendant use a deadly weapon or dangerous instrument to inflict serious physical injury. The jury thus found all of the elements necessary to return a verdict of guilty under § 13A-6-21(a)(1), and, pursuant to the Edwards line of cases, a judgment of conviction on that lesser included offense is due to be entered against Cobb.
INSTRUCTIONS ISSUED; APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, SHORES, and COOK, JJ., concur.
KENNEDY, J., concurs in the result.
HOUSTON and BUTTS, JJ., concur in part and dissent in part.
NOTES
[1] The judge instructed the jury with respect to the charges regarding the assault on David Fassett as follows:

"Under the indictment that the grand jury returned, what the State would have to prove, beyond a reasonable doubt, to convict Mr. Cobb of second degree assault on Dave Fassett is as follows: That he intended to cause physical injury to Dave Fassett. That he caused physical injury to Dave Fassett. And, he did it by means of a dangerous instrument, his fist. If the State proves all three of those things, beyond a reasonable doubt, by the evidence, it is entitled to a conviction on the charge of second degree assault on Dave Fassett. If it does not prove any one of those three things beyond a reasonable doubt, Mr. Cobb is entitled to an acquittal on the charge of assault in second degree on Dave Fassett. And you may consider whether the State proved the charge of third degree assault, with respect to Dave Fassett. And, it can do it in two ways. It can prove beyond a reasonable doubt, that, number one, he intended to cause physical injury to Mr. Fassett. And, number two, he did cause physical injury. Or, that he recklessly caused physical injury to Mr. Fassett."
[2] Curiously, of the cases in which the Court of Criminal Appeals has held that body parts may be deadly weapons or dangerous instruments, only in Ray v. State, 580 So.2d 103 (Ala.Crim. App.1991), did the defendant petition for the writ of certiorari. See McCray v. State, 643 So.2d 610 (Ala.Crim.App.1992); Nelson v. State, 462 So.2d 962 (Ala.Crim.App.1984); Baker v. State, 441 So.2d 1061 (Ala.Crim.App.1983); Brock v. State, 555 So.2d 285 (Ala.Crim.App.1989); and Hollis v. State, 417 So.2d 617 (Ala.Crim.App. 1982). Our denial of the writ in Ray is not to be taken as a ruling on the merits.
[3] For a discussion of the distinction between kicking with a shod foot as compared to kicking someone with a bare foot, see Annot., Kicking as Aggravated Assault, or Assault with Dangerous or Deadly Weapon, 19 A.L.R. 5th 823 (1994).