[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 195 
Willie Burgess, Jr., was indicted for, tried for, and convicted of, capital murder on the theory of robbery-murder as defined by §13A-5-40(a)(2), Ala. Code 1975. The jury recommended death and the trial court sentenced Burgess to death. Burgess appealed to the Court of Criminal Appeals, which affirmed his conviction and sentence. Burgessv. State, 827 So.2d 134 (Ala.Crim.App. 1998). Burgess petitioned for a writ of certiorari, which we issued as a matter of right pursuant to Rule 39, Ala.R.App.P., as it existed at the time of his petition.
Before us, Burgess argues numerous issues, which the Court of Criminal Appeals addresses in its long and detailed opinion. The most meritorious of the issues are fact specific. Because our review of the record, the briefs, the law, and the opinion of the Court of Criminal Appeals reveals no prejudicial error, we affirm. Several of the discussions of issues in the opinion of the Court of Criminal Appeals, however, deserve some observations by us.
The first section of the opinion of the Court of Criminal Appeals addresses Burgess's argument that the trial court erred in denying his challenges for cause against two veniremembers, Mr. H. and Mr. C, grounded on his contention that they both had "fixed opinions" about his guilt. 827 So.2d at 146.
After the prosecutor learned that a number of the veniremembers had heard or read about the murder, the prosecutor asked the veniremembers: *Page 196 
 "I want to ask you, do any of the 10 of you who have seen or read something about this case — I'm not asking if you can forget it. I don't think anybody can just wipe something out of their mind, what they've heard or read or know. But what I do want to ask you, are there any of you 10, because of what you've read or heard on television, who do not believe that you can serve as a juror in this case and base your verdict on the evidence that you hear in here?
In other words, would you already have your mind made up regardless of what we do? Any of you feel like you would?"
(R. 364-65.) (Emphasis added.) When two veniremembers, other than Mr. H. and Mr. C., responded that they would have difficulty disregarding what they had heard, the prosecutor questioned them further. However, neither Mr. H. nor Mr. C. expressed any reservations about his ability to decide the case on the basis of only the evidence presented at trial.
During his voir dire, the prosecutor also asked whether any of the veniremembers had friends who had been victims of crimes, and Mr. H., among others, raised his hand and responded: "I had a student that was murdered less than a year ago." (R. 360.) Mr. H. was not asked any further questions about this murder.
When defense counsel, during his voir dire, specifically asked Mr. H. whether he could ignore any extraneous facts in making his decision of guilt or innocence, Mr. H. responded: "I can't tell you for sure that I could." Defense counsel's voir dire of Mr. H. continued:
 "[Defense counsel]: The things that you've seen or heard, I assume, they indicated my client was guilty?
"[Mr. H.]: Yes.
 "[Defense counsel]: Do you have an opinion of his guilt or innocence such that you're biased against him?
 "[Mr. H.]: No, I don't think that — I don't think that that's the case. I don't think that my opinion is so strong that I would be assumed to be biased before the trial begins.
 "[Defense counsel]: Would you require some kind of proof from me, the defense, to prove my client is not guilty?
"[Mr. H.]: No."
(R. 416-17.) That answer concluded defense counsel's individual voir dire of Mr. H.
After defense counsel had learned through his initial voir dire of the veniremembers that Mr. C., a cabdriver, had heard "hearsay" about the case, defense counsel asked Mr. C., "Do you have an opinion as to what you've seen, read or heard, whatever reason, that would cause you to be biased against my client?" (R. 406.) Mr. C. responded: "All I can go by is just what hearsay and that hearsay don't mean nothing." (R. 407.) Defense counsel's voir dire of Mr. C. continued:
 "[Defense counsel]: I understand, except the problem is sometimes we know some things that we shouldn't know. We know some things that may not be true. That's why we call it hearsay and that's why it's not admissible in a court of law.
 "[Mr. C.]: Well, being a cabdriver, you hear more than what you normally should hear and a lot of it's been exaggerated more than it should be, so I can't, you know, say — honestly I could yes or no, just because of what I've heard.
 "[Defense counsel]: Let me ask you this question then, Mr. C. Suppose that you were a juror in this case and the district attorney put on his case and I put on my case and you went to deliberate and you got to thinking, well, you know, I know something about this case that he didn't *Page 197 
 tell me, that the D.A. didn't tell me and that [defense counsel] didn't tell me. Could you just forget about that?
"[Mr. C.]: No.
 "[Defense counsel]: So if you were possessed of some facts through what you've seen read or heard, that didn't come out in this courtroom, you couldn't ignore those facts?
 "[Mr. C.]: I would bring it to his attention that I've heard about it. Let's say he brought it up to a certain stance that it rung a bell, something was said. I'd bring it to attention.
"[Defense counsel]: Of your fellow jurors?
"[Mr. C.]: Yes.
 "[Defense counsel]: Even if the court had told you disregard everything you've seen, read, heard about this case except what you heard in this courtroom.
"[Mr. C.]: No, I wouldn't say it then.
"[Defense counsel]: You would keep it to yourself?
"[Mr. C.]: Yes.
 "[Defense counsel]: You think you could exclude that and say, well, I don't know that, let me put this out of my mind and decide this case on just these facts?
"[Mr. C.]: I couldn't say."
(R. 407-10.) Neither the defense counsel, the prosecutor, nor the trial judge questioned Mr. C. individually further in this regard. However, at the conclusion of his voir dire, when defense counsel asked all the veniremembers, including Mr. H. and Mr. C., whether any of them would have a problem ascertaining the facts from the evidence presented at trial and applying to those facts the law instructed by the trial court, no one responded. (R. 422-23.)
At the close of his voir dire of the panel of veniremembers including Mr. H. and Mr. C., defense counsel moved to strike Mr. H. and Mr. C. for cause. Defense counsel moved to strike Mr. H. for cause on the grounds that he had expressed a fixed opinion as to Burgess's guilt and that he had had a former student who was killed by Burgess's cousin, Roy Burgess. (The record does not reflect that Mr. H. stated that Burgess's cousin had killed his student.) The prosecutor argued that, although Mr. H. did state, in response to the prosecutor's question whether any of the veniremembers knew any victims of crime, that he had a student who had been killed, Mr. H. did not state that this prior incident would influence his decision in Burgess's case. (R. 360, 431.) Defense counsel moved to strike Mr. C. for cause on the ground that Mr. C. had heard "hearsay facts" which biased him against Burgess. (R. 429.) The trial court denied defense counsel's motions to strike both Mr. H. and Mr. C. for cause. Thus, defense counsel used two of his peremptory strikes to remove Mr. H. and Mr. C. from the venire.
Burgess contends that the trial judge's denial of his challenges for cause against Mr. H. and Mr. C. relegated him to spending peremptory challenges on them and thereby violated his constitutional right to a fair and impartial jury trial. The test for deciding a challenge for cause is whether the juror can ignore his preconceived ideas and render a verdict according to the evidence and the law. Ex parte Taylor,666 So.2d 73, 82 (Ala. 1995). A juror "need not be excused merely because [the juror] knows something of the case to be tried or because [the juror] has formed some opinions regarding it." Kinder v. State,515 So.2d 55, 61 (Ala.Crim.App. 1986). For a juror to be disqualified, the juror's opinion of the defendant's guilt or innocence "must be so fixed that it would bias the verdict a juror would be required to render." Oryang v. State, 642 So.2d 979, 987 (Ala.Crim.App. 1993) (quoting *Page 198 
Siebert v. State, 562 So.2d 586, 595 (Ala.Crim.App. 1989)) (emphasis added). See also § 12-16-150, Ala. Code 1975.
This Court has recognized that
 "[o]nce a juror makes an initial statement that is vague, ambiguous, equivocal, uncertain, or unclear or that shows confusion, it is the trial judge's function to question the juror further, so as to ascertain whether the juror can be impartial."
Knop v. McCain, 561 So.2d 229, 234 (Ala. 1989). "The qualification of prospective jurors rests within the sound discretion of the trial judge."Morrison v. State, 601 So.2d 165, 168 (Ala.Crim.App. 1992); Ex parteCochran, 500 So.2d 1179, 1183 (Ala. 1985). This Court will not disturb the trial court's decision "unless there is a clear showing of an abuse of discretion." Ex parte Rutledge, 523 So.2d 1118, 1120 (Ala. 1988). "This court must look to the questions propounded to, and the answers given by, the prospective juror to see if this discretion was properly exercised." Knop, 561 So.2d at 232. We must consider the entire voir dire examination of the juror "in full context and as a whole." Ex parteBeam, 512 So.2d 723, 724 (Ala. 1987); Ex parte Rutledge, 523 So.2d at 1120.
Having reviewed the entire voir dire examination of Mr. H and Mr. C., we do not find that either had a fixed opinion about Burgess's guilt or innocence that would bias his verdict in this case. Mr. H. expressed no bias against Burgess and revealed no fixed opinion about Burgess's guilt or innocence. While Mr. C., in answering defense counsel's question whether anything Mr. C. had seen, read, or heard would bias him against Burgess, stated that he had heard hearsay about the case, he did not state whether what he had heard was favorable or unfavorable to Burgess. In fact, Mr. C. did not state any of the facts that he had heard. For aught that appears in the record, Mr. C. heard only hearsay facts that were immaterial, innocuous, or even favorable to Burgess. Mr. C.'s act of answering the inquiry about bias — his act of answering in and of itself — was more likely an abundance of candor than a disclosure of bias. None of Mr. C.'s responses during the voir dire reveal any bias against Burgess. Thus, the trial court did not abuse its discretion in denying defense counsel's challenges for cause against Mr. H and Mr. C. See, e.g., Thomas v. State, 539 So.2d 375 (Ala.Crim.App.),aff'd, 539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910 (1989); Bushv. State, 695 So.2d 70 (Ala.Crim.App. 1995); Johnson v. State,356 So.2d 769 (Ala.Crim.App. 1978); and McCorvey v. State, 339 So.2d 1053
(Ala.Crim.App.), cert. denied, 339 So.2d 1058 (Ala. 1976).
In section IX(A) of its opinion, the Court of Criminal Appeals discusses one of the prosecutor's jury arguments, which the Court of Criminal Appeals characterizes as "reply in kind." While the reply-in-kind doctrine allows a party to argue a topic argued by the opposing party even though that topic may be immaterial, irrelevant, prejudicial, or otherwise improper, the reply-in-kind doctrine does not allow a party to state untrue facts outside the record in order to rebut true facts of record argued on that topic by the opposing party. Exparte Rutledge, 482 So.2d 1262 (Ala. 1984); Davis v. State, 494 So.2d 851
(Ala.Crim.App. 1986).
Even so, we find no error to reverse on this issue. An improper argument by counsel cannot, in and of itself, constitute an error. SeeEx parte Land, 678 So.2d 224 (Ala. 1996); and Ex parte Musgrove,638 So.2d 1360 (Ala. 1993), cert. denied, Rogers v. Alabama, 513 U.S. 845
(1994). *Page 199 
While parties may cause or invite an error, only the court can commit an error. The error, if any, would consist only of incorrectly overruling an objection to an improper argument, incorrectly refusing a requested curative instruction, giving an inadequate curative instruction after a proper request, denying a motion for a mistrial in the case of an ineradicably prejudicial argument, or, in the very rare case, omitting some necessary sua sponte redress for an argument so egregious as to require sua sponte redress by the court even absent an objection with appropriate follow-up by the aggrieved party. The prosecutor's argument in this particular instance does not approach the rare degree of egregiousness that would require sua sponte redress by the court, and the defendant did not interpose any objection to the argument. Thus this issue presents no reversible error. See Rule 45A, Ala.R.App.P.; Kuenzelv. State, 577 So.2d 474 (Ala.Crim.App. 1990), aff'd, 577 So.2d 531
(Ala.), aff'd, 502 U.S. 886 (1991); and Ex parte Womack, 435 So.2d 766
(Ala.), cert. denied, 464 U.S. 986 (1983).
Section XVI of the opinion of the Court of Criminal Appeals addresses Burgess's argument that the trial court erred in denying his motion to suppress the videotaped statement he made to news reporters on the night of his arrest. In his brief Burgess argues that the police forced him to "walk the media gauntlet" when they could have taken him from the interrogation room to the Morgan County Jail "back through the basement garage," which, Burgess implies, would have provided a route isolated from the media. (Appellant's brief, p. 74.) We have searched the record in vain to find any evidence of a route that would have been isolated from the news media all the way from the building containing the interrogation room to the entrance of the county jail. For aught that appears from the record, any route available to the police would have been equally accessible to the news media. Thus the factual deficiency of Burgess's argument in this regard pretermits any analysis of the legal issues entailed by his motion to suppress.
Section XXIII of the opinion of the Court of Criminal Appeals addresses Burgess's argument that the trial court erred in refusing three requested jury instructions during the guilt phase of the trial. While we agree with the Court of Criminal Appeals that the three requested instructions were refused without error, we notice the recitation that the trial court "further instructed [the jury] that, while intent to commit murder may bepresumed from the defendant's act of using a deadly weapon, thepresumption will not support the conviction of capital murder."827 So.2d at 189. (Emphasis added.) An instruction that "intent to commit murder may be presumed from the defendant's act of using a deadly weapon," would unconstitutionally shift to the defendant the burden of proving lack of specific intent. Yates v. Evatt, 500 U.S. 391 (1991); andSandstrom v. Montana, 442 U.S. 510 (1979). The correct instruction on this particular point would be that intent to kill may be inferred from the defendant's act of using a deadly weapon. Sparks v. State, 261 Ala. 2,75 So.2d 103 (1953); and Douglas v. State, 42 Ala. App. 314, 328,163 So.2d 477, 490 (1963), overruled on other grounds, 380 U.S. 415
(1965). Ex parte Bayne, 375 So.2d 1239, 1244 (Ala. 1979), is overruled to the extent that it misconstrues Douglas, supra, and allows an instruction that intent may be presumed, *Page 200 
as distinguished from inferred, from the use of a deadly weapon.
We have, however, reviewed the entire text of the trial judge's jury instruction on this point. While the trial judge did, toward the beginning of his instruction, say that the intent "may be presumed," he then promptly and correctly changed his terminology to say that the intent "may be inferred" and he concluded his instruction on this topic with the correct "may-be-inferred" terminology. The absence of any objection by the defendant specifically directed to the court's initial incorrect verbiage that intent "may be presumed" suggests that the defendant was satisfied that the trial judge's corrected language was adequate to eliminate any prejudice from the initially incorrect language. See Ex parte Woodall, 730 So.2d 652, 657 (Ala. 1998);Kuenzel, supra; and Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala. 1985). Accordingly, we find no plain error in this regard. While defense counsel did object to other aspects of the instruction on inferable intent, we hold that these other aspects of the instruction, in the context of the entire jury charge, were correct.
The law requires that the Court of Criminal Appeals conduct its own independent review of the death penalty imposed on the defendant. §13A-5-53 and § 12-22-241, Ala. Code 1975. We find no error in the discharge of that duty in this case by the Court of Criminal Appeals.
In accordance with the foregoing, the judgment of the Court of Criminal Appeals affirming the defendant's conviction and sentence is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, and England, JJ., concur.
Brown, J., recuses herself.*
* Justice Brown was a member of the Court of Criminal Appeals when that court considered this case. *Page 747