WELCH, Judge, dissenting.
I disagree with the majority opinion affirming Gregory Lance Henderson's capital-murder conviction and death sentence because, I believe, the majority has reached the wrong conclusion in Part I of its opinion.
There was no dispute at trial that Henderson ran over Deputy Anderson with his vehicle, so the dispositive issue at trial was whether Henderson acted with the specific intent to kill. Therefore, correct instructions to the jury on the intent to kill were crucial. Henderson argues that, although the law allows the inference of an intent to kill from the use of a deadly weapon, the trial court here incorrectly instructed the jurors that they could presume intent from the use of a dangerous instrument.
The majority correctly states that this issue is to be reviewed for plain error because Henderson failed to object to the jury instructions on the presumption of intent and because he requested the court to instruct the jury about the use of a dangerous instrument as it related to the intent to kill. An error invited by a defendant at trial is waived for purposes of review unless it rises to the level of plain error. Williams v. State, 710 So.2d 1276, 1316 (Ala. Crim. App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997). See also McNabb v. State, 887 So.2d 929, 983 (Ala. Crim. App. 2001), aff'd, 887 So.2d 998 (Ala. 2004).
*1051 " 'In setting out the standard for plain error review of jury instructions, the court in United States v. Chandler, 996 F.2d 1073, 1085, 1097 (11th Cir. 1993), cited Boyde v. California, 494 U.S. 370 (1990), for the proposition that "an error occurs only when there is a reasonable likelihood that the jury applied the instruction in an improper manner." Williams v. State, 710 So.2d 1276, 1306 (Ala. Crim. App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997).' "
Broadnax v. State, 825 So.2d 134, 196 (Ala. Crim. App. 2000), affirmed, 825 So.2d 233 (Ala. 2001).
For the reasons discussed below, it is clear that there is a reasonable likelihood that the jury applied the instructions on intent in an improper manner and that, as a result, plain error occurred. For that reason, I believe Henderson's capital-murder conviction and death sentence should be reversed.
Section 13A-1-2(7), Ala. Code 1975, defines "deadly weapon" as
"[a] firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury. The term includes, but is not limited to, a pistol, rifle, or shotgun; or a switch-blade knife, gravity knife, stiletto, sword, or dagger; or any billy, black-jack, bludgeon, or metal knuckles."
Section 13A-1-2(5), Ala. Code 1975, defines "dangerous instrument" as
"[a]ny instrument, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is highly capable of causing death or serious physical injury. The term includes a 'vehicle,' as that term is defined in [ § 13A-1-2(15), Ala. Code 1975]."
The Alabama Supreme Court has recognized that the "intent to kill may be inferred from the defendant's act of using a deadly weapon." Ex parte Burgess, 827 So.2d 193, 199 (Ala. 2000) (some emphasis added; some emphasis omitted). The trial court's instructions that intent to kill may be inferred from the use of a dangerous instrument is completely unsupported by any legal authority in Alabama.
The trial court instructed the jury on intent as follows:
"A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific."
(R. 2416-17.) It further instructed:
"The element of intent being a state of mind or mental purpose is usually incapable of direct proof, and it may be inferred from the character of the assault and the use of a dangerous instrument and other attendant circumstances. Intent may be presumed from the act of using a dangerous instrument and/or from the character of the assault, including the nature and the amount of force used in the fatal injury.
"The intention to do great bodily harm to murder or commit any other crime by means of an assault may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention. The intention may be inferred from the use of-from the force or direction or from the natural or contemplated results of the violence employed from the dangerous instrument or implemented use[d] by the accused and generally from the extent and affect of the injury [inflicted] or from any deliberate action which is in the natural attempted and-which is naturally attempted and usually results in danger to the life of another.
"The intent to cause the death of the deceased may be inferred from the character of the assault, the use of *1052 a dangerous instrument and all other attending circumstances surrounding the death of the deceased."
(R. 2446-49.)
A jury charge must be considered as a whole, e.g., Hosch v. State, 155 So.3d 1048, 1085 (Ala. Crim. App. 2013), but the jury charge in this case contains numerous errors, so an examination of each error must necessarily precede the consideration of the entire charge. See Francis v. Franklin, 471 U.S. 307, 315, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) ("Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole.").
I.
The trial court instructed the jury that it could both presume[9] and infer, based solely on his use of a dangerous instrument-the vehicle-that Henderson had the specific intent to kill Deputy James Anderson. These instructions are unsupported by Alabama law. Alabama law permits a jury to infer that a defendant acted with the specific intent to kill based on the defendant's use of a deadly weapon, but Alabama law does not permit a jury to presume or infer that a defendant acted with the intent to kill based solely on a defendant's use of a dangerous instrument. The reason Alabama law has never expanded the inference to kill to include a defendant's use of a dangerous instrument is obvious, as will be detailed below.
The statutory definition of a vehicle as a dangerous instrument applies when the "instrument, ..., under the circumstances in which it is used, ... is highly capable of causing death or serious physical injury." (Emphasis added.) A vehicle can be used in a manner that results in an accident that was not the fault of the driver and that may have unintentionally caused a death; a vehicle can be used in a reckless manner that may have caused a death; and a vehicle can be used to intentionally to cause a death. All three scenarios are possible under the definition of a "dangerous instrument" in § 13A-1-2(5), Ala. Code 1975, because the definition requires consideration of the circumstances under which the dangerous instrument was used. Therefore, a death that results from the use of a vehicle or other instrument does not, per se, allow an inference that the driver of the vehicle or the wielder of the instrument had an intent to kill. Henderson's jury was erroneously instructed that it could make that precise inference. The jury was instructed repeatedly that it could find that Henderson acted with the specific intent to kill Deputy Anderson based solely on the fact that he struck the deputy with his vehicle.
Clearly, Alabama law does not hold that the mere use of a dangerous instrument-in this case, a vehicle-permits an inference of the specific intent to kill. As a result, instructions that the use of a "dangerous instrument," without more, could be used to infer the intent to kill were incorrect and unsupported by Alabama law, and they undoubtedly had a tendency to mislead the jury. There was no dispute that Henderson was driving the car, so the improper jury charge here eliminated the State's burden to prove the element of intent. The jury charge also undermined the jury's responsibility to find the facts necessary to prove Henderson's guilt beyond *1053 a reasonable doubt. Once the improper charge supplied the element of intent, the jury had to find only the additional elements that the deputy was dead and that he had been on duty when he was killed. With the element of intent established by way of the erroneous jury charge, the capital-murder conviction became an inevitability.
II.
The trial court's error in instructing the jury that it could infer from Henderson's use of a dangerous instrument that he had the specific intent to kill was exacerbated by the trial court's instruction that "[i]ntent may be presumed from the act of using a dangerous instrument and/or from the character of the assault, including the nature and the amount of force used in the fatal injury. (R. 2447.) (Emphasis added.)
This portion of the jury charge was erroneous in several respects.
A.
First, the use of the word "presumed" improperly shifted the burden of proof to Henderson.
"An instruction that 'intent to commit murder may be presumed from the defendant's act of using a deadly weapon,' would unconstitutionally shift to the defendant the burden of proving lack of specific intent. Yates v. Evatt, 500 U.S. 391 (1991) ; and Sandstrom v. Montana, 442 U.S. 510 (1979)."
Ex parte Burgess, 827 So.2d 193, 199 (Ala. 2000). See also Francis v. Franklin, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (stating the constitutional principle that the State is prohibited "from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime").
The majority relies on Ex parte Burgess to support its holding that no plain error occurred as a result of the trial court's use of the word "presumed," but this case is distinguishable from Ex parte Burgess. The Alabama Supreme Court in Ex parte Burgess noticed in its plain-error review that the trial court had incorrectly instructed the jury that the intent to commit murder could be presumed from the defendant's use of a deadly weapon and stated that such an instruction unconstitutionally shifted the burden of proof to the defendant. The Court found no plain error and stated:
"We have, however, reviewed the entire text of the trial judge's jury instruction on this point. While the trial judge did, toward the beginning of his instruction, say that the intent 'may be presumed,' he then promptly and correctly changed his terminology to say that the intent 'may be inferred' and he concluded his instruction on this topic with the correct 'may-be-inferred' terminology. The absence of any objection by the defendant specifically directed to the court's initial incorrect verbiage that intent 'may be presumed' suggests that the defendant was satisfied that the trial judge's corrected language was adequate to eliminate any prejudice from the initially incorrect language."
Ex parte Burgess, 827 So.2d at 200.
This case is distinguishable from Ex parte Burgess in two respects.
First, unlike in Ex parte Burgess, where the trial court's instruction that intent could be presumed was an error that was promptly corrected, in this case the trial court's instruction that intent could be presumed was not simply the result of the trial court's initial incorrect statement, nor was it immediately corrected. Rather, the State initiated the error when it submitted the following proposed jury charge: "Intent *1054 may be presumed from the act of using a deadly weapon and from the character of the assault, including the nature and amount of force used in the fatal injury." (C. 305.)(Emphasis added.) The trial court then instructed the jury using the "may-be-presumed" terminology from the proposed instruction and further instructed that intent could be presumed from the use of a dangerous instrument rather than a deadly weapon. Thus, the incorrect instruction-that intent could be presumed-was not inadvertent, and the instruction improperly relieved the State of its constitutional burden to prove that Henderson acted with specific intent. Therefore, Ex parte Burgess is distinguishable as to this point and does not preclude a finding of plain error.
Second, the Court in Ex parte Burgess stated that the defendant's failure to object to the trial court's instruction that intent could be presumed suggested that the defendant had determined that the trial court's subsequent instruction that intent could be inferred eliminated any prejudice that might have resulted from the incorrect initial instruction. Again, this case is distinguishable. Here, there is no indication that Henderson's failure to object to the instruction regarding the presumption of intent was based on a strategic decision or a determination that any prejudice was eliminated by the instruction that intent could be inferred, and any belief that prejudice was eliminated because the trial court also instructed the jury on the inference of intent was based on trial counsel's misapprehension of the law.
The record reflects that the State had submitted proposed instructions that included the term "deadly weapon," and the trial court stated that it had a problem with the instructions because the State was basing its case on Henderson's use of a "dangerous instrument." Henderson stated that he also had that objection. The State said it would substitute "dangerous instrument" for "deadly weapon," and Henderson said that, as long as that substitution was made, he had no objection to those instructions on that basis. Therefore, even if the trial court had attempted to correct its instruction on the presumption of intent, the trial court continued to instruct the jury erroneously that it could infer intent from the use of a dangerous instrument-an instruction and legal theory entirely without support in Alabama law. Furthermore, even if, as in Ex parte Burgess, the record suggested that Henderson had determined that no prejudice occurred as a result of the trial court's instruction on the presumption of intent, that determination would have been flawed because there is no legal authority in Alabama permitting or approving a jury charge stating that the intent to kill can be inferred from the use of a dangerous instrument. Therefore, the lack of an objection to the instruction on the presumption of intent does not weigh against a finding of prejudice with regard to that instruction, and Ex parte Burgess does not support the majority's holding that no plain error occurred as a result of the trial court's erroneous instruction.
The jury, of course, was instructed that Henderson was presumed to be innocent, and that the presumption of innocence remained throughout trial unless each juror determined from the evidence that Henderson was guilty beyond a reasonable doubt, but those instructions acted to reinforce the instruction that the jury could also presume that Henderson had the intent to kill because he used a dangerous instrument. Furthermore, the instructions regarding the presumption of innocence were inconsistent with the instruction that the jury could infer that Henderson had the intent to kill. The two terms were never defined for the jury, and the conflict between those instructions was never clarified *1055 for the jury. A reasonable juror could easily have resolved the conflict by choosing to presume that Henderson had the specific intent to kill solely based on his use of a dangerous instrument.
The general instructions on the presumption of innocence did not dispel the plain error that resulted from the challenged instruction regarding the presumption of the intent to kill. In Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court stated that instructions about the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt were "not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." Sandstrom v. Montana, 442 U.S. at 519 n.7, 99 S.Ct. 2450. As the United States Supreme Court further explained in Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) :
"Nothing [in the specific instructions] or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict."
471 U.S. at 322, 105 S.Ct. 1965 (footnote omitted).
The majority correctly states that Henderson invited the error by agreeing with the trial court's plan to instruct the jury that the intent to kill could be established by the use of a dangerous instrument. Nonetheless, that invited error rose to the level of plain error because there was a reasonable likelihood that the jury applied the instruction in an improper manner. Henderson's willingness to have the jury instructed that intent could be inferred and presumed from the use of a dangerous instrument was not a strategic choice "made after thorough investigation of the law and the facts relevant to plausible options," Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but was apparently based on a misapprehension of the law; that is, he failed to realize that there is no legal authority in Alabama permitting or approving a jury charge stating that the intent to kill can be inferred from the use of a dangerous instrument.
B.
The jury instruction was erroneous for a second reason. The trial court instructed that "[i]ntent may be presumed from the act of using a dangerous instrument and/or from the character of the assault, including the nature and the amount of force used in the fatal injury." (R. 2447.)(Emphasis added.) By including the conjunction, "or," the trial court reinforced the portion of the jury charge that erroneously instructed the jury that it could presume from the mere act of using a vehicle that Henderson had the specific intent to kill.
By following the instructions it received, the jury could have found Henderson guilty of capital murder based solely on the fact that he struck Deputy Anderson with a vehicle, without explicitly finding that he had the specific intent to kill.
C.
The trial court's instruction that intent could be inferred from the character of the assault was also erroneous. The judge instructed the jury, in relevant part that intent "may be inferred from the character of the assault and the use of a dangerous *1056 instrument and other attendant circumstances" (R. 2446-47); that "[i]ntent may be presumed from the act of using a dangerous instrument and/or from the character of the assault, including the nature and the amount of force used in the fatal injury" (R. 2447)(emphasis added); and that "[t]he intent to cause the death of the deceased may be inferred from the character of the assault, the use of a dangerous instrument and all other attending circumstances surrounding the death of the deceased." (R. 2449.) These instructions again informed the jury that it could separately consider the use of a dangerous instrument as a sole means of finding that Henderson acted with the specific intent to kill, again reinforcing the error that occurred in other portions of the jury charge. As discussed earlier in this dissent, the definition of "dangerous instrument" in § 13A-1-2(5), Ala. Code 1975, states, in relevant part, that a dangerous instrument is an "instrument, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is highly capable of causing death or serious physical injury." (Emphasis added.) Thus, the manner in which the defendant used a vehicle or other dangerous instrument is one of the circumstances that may properly be considered by a jury in determining whether the accused had the specific intent to kill the victim. The jury should have been instructed that it could consider whether the use of a vehicle was the use of a dangerous instrument and that it could consider the manner in which it was used in order to determine intent. Because the driver of a vehicle could cause a death accidentally, recklessly, or intentionally, the mere use of a vehicle is not a fact that allows an inference that Henderson had a specific intent to commit murder.
D.
Each of the instructions above as it relates to the character of the assault is plagued with ambiguity. It can be argued that the instructions do not indicate to the jury whether it could consider the character of the assault to independently allow the inference of intent to kill; whether the jury could consider that the use of a dangerous instrument and all other circumstances would independently allow the inference of an intent to kill; or whether all three factors should be considered together. The ambiguity of this part of the trial court's charge leaves no way for this Court to determine the manner in which the jury did, in fact, interpret the instructions. It is possible that some members of the jury considered the instructions to mean that the jury could infer intent only after considering all the matters delineated and that other members of the jury could have interpreted the instructions to mean that the jury could infer intent from any of them considered separately. The fact that the instructions might have been considered correctly by some members of the jury does not diminish the possibility that there is a reasonable likelihood that the jury as a whole applied the instructions in a way that violated Henderson's constitutional rights and permitted the jury to find him guilty of capital murder without first finding that he acted with the specific intent to kill Deputy Anderson.
III.
The trial court also instructed the jury that the intent to kill could be inferred "from any deliberate action which is in the natural attempted and-which is naturally attempted and usually results in danger to the life of another." (R. 2448.) However, Henderson was not charged with engaging in actions that usually result in danger to the life of another, he was charged with specifically intending to cause the death of *1057 Deputy Anderson. This part of the instruction impermissibly lessened the State's burden of proof, and it permitted the jury to find that the State did not have to prove that Henderson acted with the specific intent to kill but, rather, that the State had to prove only the mental state of recklessness[10] to find Henderson guilty of capital murder. "According to Alabama law, a defendant must have the intent to kill in order to be found guilty of a capital offense." Heard v. State, 999 So.2d 992, 1005 (Ala. 2007). Therefore, the jury instruction constituted plain error.
IV.
In an alternative argument to the main holding, the majority relies on Harris v. State, 873 So.2d 1171 (Ala. Crim. App. 2003), for the proposition that, "whether an object constitutes a deadly weapon depends on totality of the circumstances of the case, including the nature of the object, the manner in which it is used, and the circumstances surrounding its use." The majority states:
"[T]he trial court ... could have instructed the jury that intent to kill could be inferred from the use of a deadly weapon as defined in § 13A-1-2(7), Ala. Code 1975. The statute defines 'deadly weapon' as not only a firearm, but also anything 'adapted for the purposes of inflicting death or serious physical injury.' The jury here could reasonably have found that, based on the 'totality of the circumstances of the case, including the nature of the object, the manner in which it is used, and the circumstances surrounding its use,' the vehicle was a deadly weapon and that Henderson acted with the specific intent to kill Deputy Anderson with that deadly weapon."
Henderson, 248 So.3d at 1010.
The Harris Court quoted from and purported to rely on Ex parte Cobb, 703 So.2d 871 (Ala. 1996), when, in fact, the Harris Court blatantly disregarded the holding of that case. Harris was wrongly decided, and the majority's reliance on Harris is, therefore, misplaced.
In Ex parte Cobb, the Alabama Supreme Court examined for the first time "whether a person's fist or hand fits the statutory definition of a deadly weapon or a dangerous instrument." 703 So.2d at 874. The Court in Ex parte Cobb explained that in Stewart v. State, 405 So.2d 402 (Ala. Crim. App. 1981), this Court had stated that, before the January 1, 1980, adoption of the Alabama Criminal Code, Alabama courts "subscribed to the view that it was the use of the weapon or instrument, and not solely its nature, that determined whether or not it was esteemed deadly." 703 So.2d at 874 (emphasis added), quoting Stewart, 405 So.2d at 405. The Stewart Court had held that there was no limit in the statutory definition of "deadly weapon" that would prevent fists from being considered deadly weapons depending on the circumstances in which they were used. The Court in Ex parte Cobb disagreed, *1058 and stated that, in the statutory definition of "deadly weapon," the Alabama Legislature intended to include as deadly weapons only items similar to the weapons specifically identified in the statute: "a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles." 703 So.2d at 874. The Court in Ex parte Cobb held that fists or other body parts could not constitute deadly weapons or dangerous instruments. The Court also held: "To the extent that Stewart v. State, 405 So.2d 402 (Ala. Crim. App. 1981), held that hands or fists may be deadly weapons or dangerous instruments, that case is overruled, and all cases following that holding are, to that extent, likewise overruled." 703 So.2d at 878.
In spite of the clear holding in Ex parte Cobb, the Harris Court held:
"[A] proper determination of whether an object constitutes a deadly weapon should be made based on the totality of the circumstances of the case, including the nature of the object, the manner in which it is used, and the circumstances surrounding its use. Under the circumstances of this case, we conclude that the piece of a concrete block the appellant threw into [the victim's] vehicle was 'adapted for the purposes of inflicting death or serious physical injury. § 13A-1-2(7), Ala. Code 1975. Therefore, it constituted a deadly weapon ...."
873 So.2d at 1174. Furthermore, in reaching its holding, the Harris Court relied primarily on cases that had been decided before that Court overruled Stewart v. State and the cases following that holding. Consideration of the circumstances under which an object was used is limited by statute and caselaw to determining whether an object constitutes a dangerous instrument, and that consideration has no place in determining whether an object constitutes a deadly weapon. Section 13A-1-2(5), Ala. Code 1975, defines a dangerous instrument as "[a]ny instrument, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is highly capable of causing death or serious physical injury." (Emphasis added.) Therefore, consideration of the manner in which an object is used is relevant only to a determination of whether an object constitutes a dangerous instrument.
By allowing consideration of the totality of the circumstances, including the manner in which Henderson used the vehicle, to determine whether it constituted a deadly weapon, the majority has disregarded the clear holding of the Alabama Supreme Court in Ex parte Cobb; eliminated and rendered meaningless the clear distinction between the terms, "deadly weapon" and "dangerous instrument" that was intended by the Alabama Legislature; erroneously used those two terms in legal analysis as if they were synonymous; and violated its duty to follow the precedents established by the Alabama Supreme Court, see, e.g., Woodward v. State, 123 So.3d 989, 1047 (Ala. Crim. App. 2011). Because Harris failed to follow the holding of the Alabama Supreme Court in Ex parte Cobb, this Court should reverse Harris and all other cases from the Court of Criminal Appeals holding that, to determine whether an object constitutes a deadly weapon, the totality of the circumstances of the case, including the nature of the object and the manner in which it is used, should be considered.
Furthermore, the Harris Court incorrectly interpreted and applied a portion of the definition of a deadly weapon. Section 13A-1-2(7), Ala. Code 1975, defines a deadly weapon as "[a] firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury." (Emphasis added.) Black's Law Dictionary defines "adaptation"
*1059 as "[t]he act or process of fitting or suiting one thing or form to another; the process of adjusting oneself or some thing to new conditions." Black's Law Dictionary 44 (10th ed. 2014). For example, when a toothbrush has been sharpened to a point for the purpose of stabbing someone, the toothbrush has been adjusted to new conditions and fitted from one form to another, and it can correctly be said that the toothbrush was adapted for the purpose of inflicting death or serious bodily injury. "Adopt" has been defined as "to take up and practice or use." Merriam-Webster's Collegiate Dictionary 17 (11th ed. 2003). For example, when a baseball bat is swung at a person's head with the intent to cause physical harm, the baseball bat has been adopted for that use. No change was made to the bat, it was merely used by the person with an intent other than the one for which the bat was originally made.
The Court in Harris incorrectly stated that the piece of a concrete block Harris had thrown into the victim's vehicle had been adapted to inflict death or serious physical injury. The piece of concrete block had not been changed or altered. Therefore, it would have been correct to state that the concrete block had been adopted or used in such a way as to inflict death or serious physical injury, but it had not been adapted to do so and, therefore, the concrete block did not constitute a deadly weapon. For this additional reason, Harris was wrongly decided and should be overruled by this Court.
Henderson's vehicle was not manifestly designed, made, or adapted for the purpose of causing Deputy Anderson's death. Therefore, the vehicle did not constitute a deadly weapon, and the jury could not have inferred based solely on the fact that Henderson ran over the deputy that he acted with the specific intent to kill. The majority's assertion otherwise contravenes a holding of the Alabama Supreme Court.
Conclusion
Considering the jury charge as a whole and as a reasonable juror may have interpreted it, as a reviewing court must do, I am convinced that the trial court's instructions on intent contained so many errors that there is at least a reasonable likelihood that the jury applied the instructions in an improper manner and that the jury was permitted to convict Henderson of capital murder without finding that he had the specific intent to kill. The record establishes that the errors in the jury charge constituted plain error, and that Henderson is due a reversal of his capital-murder conviction and death sentence.
For the foregoing reasons, I dissent.

The error that resulted from the trial court's erroneous use of the word, "presume," is specifically discussed in Part II.A. of this dissent.

For example, § 13A-6-2(a)(2), Ala. Code 1975, involves a non-capital murder where there was no intent to kill any particular person. Section 13A-2-2(3), Ala. Code 1975, states, in relevant part: "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
Recklessness is defined in Black's Law Dictionary as "[c]onduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk. Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing." Black's Law Dictionary 1462 (10th ed. 2014).